## PERRINE *vs.* THE FIREMAN'S INSURANCE COMPANY OF MOBILE.

1. When a creditor has in his possession money or property of the principal debtor's, which he may rightfully retain and appropriate to the satisfaction of his debt, without violating any duty or subjecting himself to an action, and, instead of retaining it, he suffers it to pass into the hands of the principal, the surety is thereby, to that extent, discharged.

2. The act of 1841 amending the charter of the Fireman's Insurance Company of Mobile, (Acts of 1840-'41, p. 18,) makes it optional with the Company to prohibit the transfer of stock by stockholders who are indebted to it; but until that option is made, no lien is created upon the stock of a stockholder, and consequently no right to retain it for the satisfaction of debts due.

3. If the Company does not actually fix its lien upon the stock of a stockholder who is its debtor, by refusing to permit its transfer, and no requisition is made upon the Company by the surety, to refuse to permit its transfer for his protection, the Company may allow the transfer to be made, without losing any right against the surety.

ERROR to the Circuit Court of Mobile.

Tried before the Hon. LYMAN GIBBONS.

This was an action of ASSUMPSIT by the Fireman's Insurance Company of Mobile against Perrine, as endorser of a note for $180, made by one Jeanarett, dated the 9th of April, 1847, payable to the defendant eight months after date, at the Bank of Mobile, and endorsed by the defendant to the plaintiffs.

The plaintiffs proved demand and notice, and rested their cause.

The defendant proved, that, sometime in the year 1839, Jeanarett became indebted to plaintiffs for ten shares of the stock of the Company, and that he (Perrine) became his security, and as such endorsed his note for the amount; that the note was renewed from time to time, until 1847, when the note sued on was given, and was the last renewal of said indebtedness.

The defendant then read in evidence the second section of an act of the legislature, passed in 1841, amending the charter of plaintiffs, which is in these words:

"SEC. 2. *And be it further enacted,* That each and every stockholder shall be individually and personally liable at law,

as well as in equity, (in addition to the securities given,) for the amount of instalments due upon each share of the stock of said Company, until the capital stock is paid in full; and the Board of Directors of said Company may, at its option, retain the dividends, and prohibit the transfer of the stock belonging to any stockholder who may be indebted to said Company for loans, or otherwise."

This amendment the Company accepted, but no by-law or resolution was ever passed, declaring that they would retain dividends or prohibit the sale of stock by the stockholders in debt to the Company.

Defendant then proved, that, in the year 1844, the said Jeanarett still owned the said ten shares of stock, and they stood in his name on the plaintiffs' books, and that he still owed the plaintiffs the same debt, for which this suit is brought, and for which defendant was surety; notwithstanding which, the plaintiffs permitted the said Jeanarett to sell his stock to a third person, which he did, and the stock was assigned and transferred on the books of the plaintiffs, to the name and account of the purchaser, by the plaintiffs, without the knowledge or consent of the defendant.

Upon this evidence, the court charged the jury :

That the statute made it optional with the plaintiffs to claim a lien on the stock; and as they had never exerted that right, and had not exercised the option spoken of in the statute, making the stock of Jeanarett liable for his debt, that no actual lien attached in favor of the Company while the stock belonged to Jeanarett, until the exercise of the right by the Company; and that the defendant, therefore, was not injured by their permitting the transfer to be made, and he could not set this up as a defence to the action, unless he first showed that he had called upon the Company to exercise the right, and they refused to do so.

To this charge the defendant excepted, and here assigns the same for error.

JOHN T. TAYLOR, for plaintiffs in error.

W. BOYLES, contra.

PHELAN, J.—Where a creditor has the means of satis-

faction in his hands, and chooses not to retain it, but suffers it to pass into the hands of the principal, the surety to that extent will be discharged. This is a well established principle. But will this principle apply to the case of the plaintiff in error?

What are we to understand by the terms "means of satisfaction in his hands?" It does not signify that whenever a creditor happens to come into actual possession, or be in actual possession of money or property of his principal debtor, whose debt is past due, he must seize and retain it; and that, if he does not do so, he will lose his remedy against a surety. If this were so, a bank which received the money of the principal on deposit, would be bound to refuse to pay it over on demand, or otherwise release the surety; or a creditor, who borrowed the horse of his principal debtor to ride a few miles, would not be allowed to surrender him back, without incurring the same consequence. "Means of satisfaction in his hands," then, signifies, property or money of the principal debtor in his lawful possession, which he may rightfully retain and appropriate to the satisfaction of his debt, without violating any duty or subjecting himself to an action; in other words, there must be a lien in his favor on the property in his hands, conferred either by law or the owner, which is defined to be a right of retainer.

What were the facts in regard to the stock of Jeanarett, at the time he transferred it, and when he owed the Company the debt for which plaintiff in error was surety? Did the Insurance Company then have any lien upon his stock for the debt he then owed? The statute makes it optional with the Company, "to retain dividends, and prohibit transfers of stock," by those stockholders who may be indebted. Until that option is made, no lien is created. To say that the words of the statute create a lien of themselves, would be to destroy the right of option, which is expressly given. Until such option is exerted, no lien is created upon the stock of a stockholder, and consequently no right to retain the same for the satisfaction of debts due. By allowing the stock to be transferred, without making choice to retain it for the satisfaction of debts due, the Company did no more than exert a lawful privilege; and if so, they could not thereby

forfeit any right they had to look to the surety. That it would be the right of a surety, in such a case, to call upon the Company to retain the dividends, or prohibit the transfer of the stock of a stockholder for his protection, seems consistent with principle; and if the Company should refuse or neglect to do so when called upon, they would lose their remedy against him; just as a creditor may be required by a surety to sue the principal, and if he neglects to do so, and the principal becomes insolvent, the surety is discharged. But if the Company did not actually fix its lien on the stock, by refusing to permit it to be transferred, because the owner was its debtor; or, if no requisition was made upon the Company by the surety to refuse for his protection to permit his principal to transfer, the Company might lawfully allow the transfer to be made, without losing any right to go upon the surety.

The charge of the court is altogether consistent with these views, and the judgment below is therefore affirmed.