### S. WATSON *vs.* D. Z. READ & others

### April Term, 1873.

SURETY—RELEASE AFTER JUDGMENT.—A release by the judgment-creditor of a levy upon the real estate of the principal, will operate as a release of the surety *pro tanto.*

*S. Watson*, for complainant.
*J. A. Cartwright*, for defendants.

THE CHANCELLOR :—The complainant became the stayor of a judgment recovered on the 23d of May, 1860, against one W. Barrow. On the 9th of July, 1861, after the expiration of the stay, execution issued upon this judgment and was levied upon the real estate of Barrow sufficient to satisfy it. The amended bill alleges that "a short time after the said levy was made, the said Barrow went to the defendant Cartwright, the owner of the judgment, and told him that if he would hold up said levy, he, Barrow, would pay the amount due on said judgment in a short time. In consideration of said promise defendant did hold up said levy, and did not have said land sold. This agreement between defendant and Barrow was entered into without the knowledge or consent of complainant, nor did complainant know of this agreement until after the filing of his bill in this cause on the 10th of October, 1872." The bill further alleges that

the land thus levied upon was afterwards taken in execution by other creditors of Barrow, and that Barrow died in the latter part of the year 1866 utterly insolvent.

The defendants have demurred to the amended bill upon the ground that the holding up of the levy was a mere agreement for delay without any consideration, and for no specified time, and therefore did not release or discharge the surety.

It is the settled law of this state, following the current of American authority, that a creditor is not bound to active diligence in the enforcement of his debt against the principal, even after judgment, and that a mere agreement with the principal for delay, without consideration, will not release the surety. *Peay* v. *Poston*, 10 Yer. 111 ; *Grimes* v. *Nolen*, 3 Hum. 412 ; *Miller* v. *Porter*, 5 Hum. 294 ; 2 Am. Lead. Cas. 123 ; 3 W. & T. Lead. Cas. Eq. 521, and the numerous cases there cited.

On the other hand, it is well settled in this state that the levy of an execution on a sufficient amount of the personal property of the principal, although it may be no satisfaction under circumstances as to the principal himself, will operate as a release of the surety. *Finlay* v. *King*, 1 Head, 123 ; and see head notes to *Pigg* v. *Sparrow*, 3 Hay. 144, Cooper's edition, and cases there cited.

The effect of a levy of the execution upon a sufficiency of the land of the principal to satisfy it, as to the rights of the surety, seems never to have been decided by our supreme court. Such a levy is clearly not a satisfaction as to the principal, without more, for the title and possession of the realty levied on still remain with the debtor ; nor, as we have just seen, is a levy upon the personal property of the principal a satisfaction as to him, if he is not in fact deprived of the property thereby. But such a levy on personalty is, as soon as made, a release of the surety. But a like result is not worked by a levy on realty, because such a levy vests no property in the sheriff, as in the case of personalty, and is no satisfaction *proprio vigore*. *Overton* v. *Perkins*, 10 Yer. 328 ; *Rogers* v. *Cawood*, 1 Sneed, 142.

It still remains to be considered, however, whether the levy on land, although not in itself a satisfaction of the execution and a release of the surety, may not have that effect by reason of the fact that the specific lien thus acquired has been lost by the act of the creditor, without the consent of the surety. The general principle, often recognized by our supreme court, is, that "a creditor must in all transactions with the principal debtor act with the most perfect good faith towards sureties, and if he do any act injurious to them or inconsistent with their rights, or omits to do any act which his duty to them requires him to perform, whereby they are injured, they will be discharged from responsibility." Story Eq. Jur., §§ 325, 326; *Bond* v. *Ray*, 5 Hum. 494; *Thompson* v. *Watson*, 10 Yer. 362. Accordingly, it is well settled in this state, as well as elsewhere, that if a creditor give up any security which he may have for the debt, the surety will be released *pro tanto*. *Scanland* v. *Settle*, Meigs, 169; 3 W. & T. Lead. Cas. Eq. 552. So, if he refuse to receive payment of his debt when tendered, the surety will be released. *Johnson* v. *Ivey*, 4 Cold. 608; 22 Ala. 575. It would seem to be a necessary sequence from these principles and decisions, that if the creditor acquire by his own voluntary act a specific lien on any of the property of the principal, real or personal, he cannot release or abandon that lien to the prejudice of the surety without releasing him *pro tanto*. Accordingly, the current of American as well as English authorities is, that when the property of the principal has been attached or taken in execution by the creditor, the lien thus acquired cannot be relinquished, without discharging the surety to an extent corresponding with its value. 3 W. & T. Lead. Cas. 552, and cases cited, especially *Sneed* v. *White*, 3 J. J. Mar. 525; *Jones* v. *Bullock*, 3 Bibb, 467; *Bank of Mo.* v. *Matson*, 24 Mo. 336.

The result would seem to be, both upon principle and authority, that the abandonment by the defendant in this case of the lien acquired by the levy on the realty of the principal was a release of the complainant.

It is insisted, however, by the learned counsel of the defendants, that our supreme court have decided otherwise in the recent case of *Lindsley* v. *Thompson* decided at the December term, 1872, at Nashville, and still in manuscript, and, if so, it is plainly my duty to follow that decision. The facts of that case were that Lindsley had, on the 19th of January, 1861, become the stayor of judgments in favor of *Thompson* v. *Barrow*, on which executions were issued and levied upon the land of Barrow, and the papers returned to the circuit court for an order of condemnation. The case lingered in court pending the war and until the 3d of June, 1865, when the record showed that the " defendants " appeared by their attorneys and had the plaintiff called out and the cause dismissed. On the 24th of October, 1866, Barrow died, and on the 20th of November following, *alias* executions were issued upon the judgments, and Lindsley superseded them by petition to the circuit court. The defense relied upon by Lindsley in the circuit and supreme court was " that Thompson, after fixing his lien upon the property of the principal, had by his own laches lost the the same, whereby the stayor was released." The ground assumed, it will be noticed, was identically the same in that case as in this, and the facts the same up to the lien acquired by the levy. That case was even stronger than this upon the point of lien, for the levy was being prosecuted by a return of the papers into court, as required by law, for the condemnation of the land. But here the analogy ceases. In the case now before the court the creditor, upon a verbal agreement with the principal, voluntarily suspended and abandoned his levy. In the other, the creditor, although he had not been actively diligent during the war, was still prosecuting his levy in court, when the defendants saw proper to take advantage of his absence, and dismiss his proceedings. It is true the agreed statement of facts in the *certiorari* case stated that the act of dismissal was, in fact, the act of Barrow, not the act of Lindsley the stayor. But on this point the supreme court say: " The record informs us

that the *defendants* came forward and caused the case to be dismissed. The plaintiff in error (Lindsley) was one of these defendants, and though the facts agreed advise us that the case was dismissed upon Barrow's motion, yet the plaintiff in error was a party to the cause, and it behooved him to take care of himself, and that was the time and the place to do it. The lien was lost by the affirmative act of the principal and by his own negligence, rather than any laches which in such a case the law would impute to the defendant in error.''

The decision, it is obvious, is put upon the ground of the consent or acquiescence of the stayor in the act of the principal which destroyed the creditor's lien. It can have no bearing upon a case where the lien was lost by the voluntary act of the creditor with the principal, of which the surety had no knowledge.

The result is, that the bill does contain equity, and the demurrer must be overruled.

I cannot forbear adding a word of commendation to the young gentlemen who have had this case in charge on both sides. Their briefs would do credit to much older lawyers. No point, or important authority was omitted, and yet their briefs were not at all prolix—no small commendation in the eye of an overworked judge.

NOTE.—This case was affirmed by the supreme court upon appeal.