# White's Adm'r *v.* Life Association of America.

63 419
114 550
63 419
[j 133 563

*Bill in Equity by Surety against Creditor, for Injunction, and Cancellation of Mortgage.*

1. *Contract of suretyship; good faith required.* —The contract of a surety imports entire good faith between him and the creditor, which must be kept inviolate in all subsequent dealings between the creditor and the principal debtor; but the term is relative, and in determining whether it has been exercised the particular facts of each case must be considered.

2. *What will discharge surety.*—As a general rule, if the creditor does any act injurious to the surety, or inconsistent with his rights, or omits, when required by the surety, to do any act which duty enjoins on him, and the surety is thereby injured; in all such cases, the surety is discharged.

3. *Same.*—Any alteration in the terms of the contract, without the assent of the surety, such as an extension of the day of payment, though but for a single day, discharges the surety. But gratuitous indulgence on the part of the creditor, or mere passiveness or delay in enforcing his legal rights against the principal, when the duty of active diligence is not devolved on him by the demand of the surety, does not affect the liability of the latter.

4. *Same.*—The surety is entitled to the benefit of all securities which the creditor may hold or acquire against the principal for the payment of the debt, and the creditor is bound to exercise reasonable diligence in the preservation and prosecution of such securities; and if they are lost by his negligence, the surety is, to that extent, discharged.

5. *Same.*—If the principal tenders payment of the debt in full, after its maturity, and the creditor declines to accept it, the surety is thereby discharged, though he may not have been injured; but the non-acceptance of an offer of payment by the principal, not amounting to a formal tender, is mere gratuitous indulgence, and does not affect the liability of the surety, unless he was thereby injured or prejudiced,—as where the principal was insolvent at the time of the offer.

6. *Same.*—If the creditor has in his hands moneys of the principal which he may rightfully retain, and voluntarily surrenders them to the principal, whom he knows to be insolvent, he is guilty of bad faith to the surety, and the latter is discharged to the extent of such moneys

7. *Same.*—Where a life-insurance company, holding the note of a deceased policy-holder, for money loaned, and knowing that his estate was insolvent, paid the money due on the policy to his personal representative, to whom it was payable by the terms of the policy, although the latter offered to deduct the amount due on the note, or to receive the note in part payment; *held*, that the surety on the note was thereby discharged.

8. *Mortgage; how affected by discharge of debt.*—A mortgage is but an incident of the debt which it was given to secure, and is extinguished when the debt is paid or discharged; but, where a principal and his surety join in a mortgage of lands, which the surety has sold to his principal, executing to him a bond for titles on payment of the purchase-money, and the debt is discharged, as to the surety, by the laches or conduct of the creditor, although the mortgage is extinguished as to the surety, it remains a valid security on the principal's equitable interest in the lands.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 20th May, 1879, by James T. Neville, as the personal representative of Worley White, deceased, against the Life Association of America, a corporation chartered under the laws of Missouri; and sought to enjoin a sale of lands under a power contained in a mortgage, and to have the mortgage cancelled and annulled, on the ground that the defendant was only a surety on the note which it was given to secure, and was discharged from liability on the note under the facts stated in the bill. The mortgage was executed by said Worley White, complainant's intestate, and one Mike White, since deceased; was dated the 26th September, 1874, and given to secure the payment of a promissory note for $1,200, of even date with the mortgage, signed by said Worley White and Mike White, and payable twelve months after date; and conveyed certain lands, of which Mike White was in possession, and which he had purchased from said Worley White, who had executed to him a bond conditioned to make title when the purchase-money was paid. The bill alleged that this note was given for money borrowed by Mike White from the defendant, and that Worley White signed it only as surety for Mike White.

[White's Adm'r v. Life Association of America.]

On the 21st September, 1874, Mike White insured his life in the said Life Association of America, for the sum of $10,000; and in the year 1878, prior to the 25th May, he departed this life, whereby, as the bill alleged, "the said defendant became, by the terms of said policy, or contract of insurance, liable to pay to the legal representatives of said Mike White the said sum of $10,000 ;" and in discharge of this indebtedness, on the 25th May, 1878, the defendant paid to the widow of said White, who had duly qualified as the administratrix of his estate, the sum of $7,500. The bill alleged that, at the time this money was paid, the defendant still held the said note of Mike White and Worley White, and knew that Worley White had signed it only as surety for Mike White ; that Mike White's estate was insolvent, and was so known to be by the defendant ; that the administratrix "was willing to settle the said note, and receive the same as a part of the amount paid by said defendant, and her attorney proposed thus to settle the said note, secured by mortgage as aforesaid, as a part of the money paid on said policy of insurance ; but, for some unaccountable reason, the said defendant declined and refused to surrender said note as cash on said settlement, and paid the money, and retained the said note." The complainant insisted in his bill "that it was the plain duty of said defendant, as a matter of justice and equity to the estate of said Worley White, and for the protection of his estate and property from being sold to pay the debt of an insolvent estate, that the said defendant should have cancelled the said note in the payment of said sum of money to said administratrix," and should have presented the note as a set-off against the debt due on the policy, and "should have exercised the right of stoppage" as to the amount due on the note ; and that the estate of his intestate was discharged by the failure of the defendant to do these things. The bill prayed a perpetual injunction of the sale under the mortgage, the cancellation of the note and mortgage, and general relief.

The chancellor sustained a demurrer to the bill, for want of equity, and dismissed it, citing the following authorities : Brandt on Suretyship, 503, § 374; *Glazier v. Douglass*, 32 Conn. 393 ; *Perrine v. Firemen's Insurance Co.*, 22 Ala. 575 ; and *Clark v. Sickler*, 64 N. Y. 231. The chancellor's decree is now assigned as error.

D. P. LEWIS, for appellant.—1. The bill contains equity. If a lien was necessary, on the part of defendant, to entitle the surety to claim the debt as paid, the facts show a lien— that is, a right to retain the amount due on the note out of

the insurance money, in two ways: 1st, by the expressed wish and agreement of the administratrix; 2d, by operation of law, on account of the insolvency of the deceased debtor's estate. The refusal of Mrs. White's proposal and offer was a rejected tender, so far as the surety was concerned; and no further act was necessary to make it effectual, as an offer to pay the mortgage debt.—*Rudolph v. Wagner*, 36 Ala. 698. The tender and refusal of the mortgage debt extinguishes the interest of the mortgagee in the property conveyed, and renders void a subsequent sale under the power in the mortgage.—*Jackson v. Crafts*, 18 Johns. 110; *Kortright v. Cady*, 21 N. Y. 343; *Edwards v. Insurance Co.*, 21 Wendell, 46; *Coggs v. Bernard*, 2 Ld. Raymond, 909; *Johnson v. Zink*, 51 N. Y. 333; Comyn's Dig., *Mortgage*, A. Although such offer may not operate as a payment, so far as the principal is concerned, its refusal discharges the surety, and operates as a new loan to the principal alone.—*McQuesten v. Noyes*, 6 N. H. 19; *Johnson v. James*, 10 Cush. 503; *Johnson v. Ivey*, 4 Coldw. Tenn. 608; 3 Indiana, 31; 46 Vermont, 258; 25 Mich. 503. The proposal of the administratrix was, that the defendant should "retain possession" of so much of the insurance money as would pay the mortgage debt; and this gave the defendant a lien.—33 Ala. 534; 18 Ala. 552; 14 Ala. 702; 2 Brickell's Digest, 213, §§ 1, 22. Independent of this proposal, the defendant had a lien by operation of law, growing out of the mutual indebtedness existing between it and Mike White's estate, and the known insolvency of that estate.—*Perrine v. Insurance Co.*, 22 Ala. 575; 1 Atk. 228; *Railroad Co. v. Rhodes*, 8 Ala. 206-13; 2 Vermont, 428; 8 Taunton, 499; *Lanesboro v. Jones*, 1 P. Wms. 325; *Jeff v. Wood*, 2 P. Wms. 128; 5 Vesey, 108; 11 Vesey, 24; 13 Vesey, 180; 19 Vesey, 465; *Rawson v. Samuel*, 1 Cr. & Ph. 161; *Samson v. Hart*, 14 Johns. 63.

2. The facts alleged bring the case within the general principle, that a person who has two funds, from which he may satisfy his demand, shall not, by his capricious election, disappoint another, who can resort to but one of those funds, but will be required to exhaust the separate fund, before resorting to the common fund.—White & Tudor's Leading Cases in Equity, vol. 2, pp. 259-60; 19 Ala. 126; 1 Story's Equity, §§ 588, 613; 1 Hopkins Ch. 460; 7 Johns. Ch. 184; 10 N. Y. 178; *Coker v. Shropshire*, 59 Ala. 542; 2 Barbour's Ch. 109; 12 Barbour, 578; 2 E. C. Greene, 496.

3. The chancellor erred, also, in dismissing the bill absolutely, without giving the complainant an opportunity to amend.—1 Daniell's Ch. Pr. 598, ed. 1871; 2 Phill. Ch. 545;

4 My. & Cr. 554; 2 My. & Cr. 111; *Calhoun v. Powell*, 42 Ala. 647.

WALKER & SHELBY, *contra*.—The defendant had no lien on the policy, and it does not appear that there was any connection whatever between the loan of money, in which the note and mortgage originated, and the contract of insurance. What, then, has the defendant done, to discharge the surety? A careful examination of the facts, as alleged in the bill, shows that the defendant has merely indulged the principal debtor—that it failed to collect the note, when it could have collected it; that, having no notice to be active, it was passive. Mere passiveness on the part of the creditor, or delay, in the absence of any notice or request by the surety to proceed to enforce his legal remedies, does not discharge the surety.—*Summerhill v. Tapp*, 52 Ala. 227. "Having the means of satisfaction in his hands," this court said, "does not signify that, whenever a creditor happens to come into actual possession of money or property of the principal debtor, whose debt is past due, he must seize and retain it; and that, if he does not do so, he will lose his remedy against the surety": "it signifies money or property of the principal debtor, which he may rightfully retain, and appropriate to the satisfaction of his debt, without violating any duty, or subjecting himself to an action; in other words, there must be a lien in his favor on the property in his hands, conferred either by law or the owner, which is defined to be a right of retainer."—*Perrine v. Firemen's Insurance Co.*, 22 Ala. 576. To the same effect, see Brandt on Suretyship, § 574; *Glazier v. Douglass*, 32 Conn. 393.

2. A proposal to pay, without more, is not a legal tender. *Camp v. Simon*, 34 Ala. 126; *McGehee v. Gewin*, 25 Ala. 186. A mere offer to pay by the principal debtor, and an omission so to do because of a request by the creditor to retain the money, and the subsequent insolvency of the principal, do not discharge the surety.—*Clark v. Sickler*, 64 N. Y. 231.

3. The chancellor thought the bill was not amendable, and therefore dismissed it absolutely. There was no offer to amend.—*Bishop v. Wood*, 59 Ala. 258.

BRICKELL, C. J.—The contract of suretyship differs materially from that of a guarantor, bound by a separate, distinct contract from that of the principal, founded usually on another consideration, entitled to notice of the default of the principal, and not chargeable with non-performance until such notice is given. Arising from joining in the making of a promissory note, joint and several in its terms, not nego-

tiable, the consideration moving only to the principal, it was defined in *Evans v. Keeland*, 9 Ala. 46, as " a contract whereby one person engages to be answerable for the debt, default, or miscarriage of another. It is an obligation accessorial to that of the principal debtor : the debt is due from the principal, and the surety is merely a guarantor for its payment."

The contract of a surety imports, it is said by Judge Story, entire good faith and confidence between the parties, in regard to the whole transaction. The creditor, being informed of the relation, is bound to the duty of disclosure of all facts and circumstances, which are calculated to affect materially the discretion of the surety, or the degree of his responsibility.—*Railton v. Matthews*, 10 C. & F. 934 ; *Hamilton v. Watson*, 12 *Ib.* 109 ; *Owen v. Homan*, 3 Mac. & G. 378 ; *Pidcock v. Bishop*, 5 Dow. & Ry. 505. The good faith, which must be observed in the making of the contract, must be kept inviolate in all subsequent transactions between the creditor and principal. The proposition is thus stated in a general form : " If a creditor does any act injurious to the surety, or inconsistent with his rights ; or, if he omits to do any act, when required by the surety, which his duty enjoins him to do, and the omission proves injurious to the surety ; in all such cases, the latter will be discharged."—1 Story's Eq. § 324–5.

We have numerous decisions, in which these general principles have been applied, and especially directed to a consideration of acts or omissions of the creditor, subsequent to the making of the contract, which have been relied upon as relieving the surety from liability. Any alteration of the contract, without the consent of the surety, *as to him* extinguishes its obligation. It ceases to be the contract into which he entered ; and though the alteration may not work injury to him, he is discharged, because he has not given assent to the new contract, and the original contract, to which assent was given, has been displaced and extinguished. *Comegys v. Booth*, 3 Stew. 14 ; *Pyke v. Searcy*, 4 Porter, 52 ; *McKay v. Dodge*, 5 Ala. 388. The time of performing the contract, the day of payment, may be extended, by some subsequent arrangement between the creditor and the principal, to which the surety does not consent. If there is such an agreement, the surety is discharged, because the burdens of the contract are enlarged ; there is, practically, a change of the original contract—the creditor places himself in a position, in which he cannot, on notice from the surety, proceed to sue on the contract, or respond to the decree of a court of equity, the surety has a right to obtain, compelling him to sue the principal. Here, again, the in-

quiry is not, whether practically any injury has resulted to the surety. It is enough that the arrangement has been entered into without his consent; and from all such transactions good faith to the surety compels the creditor to abstain.

Mere gratuitous indulgence of the principal, whether extended at his request, or without it yielded by the creditor from sympathy, from an inclination to favor him, or the result of mere passiveness, will not operate to discharge the surety. There must be an agreement, founded on a valuable consideration; for, as we have said, there is practically a change of the original contract—a new contract, into which the surety has not entered. The length of the time of indulgence, or extension, is not material. The creditor cannot, for a day, or an hour, by an agreement to which the surety does not yield assent, tie up his hands, so that the surety would be deprived of the right to proceed instantly against the principal, on the payment of the debt; nor hold him to the agreement made alone with the principal.—2 Brick. Dig. 385, §§ 160–165. The main proposition, on which the chancellor rendered the decree now assailed, and which is now advanced to support it, is affirmed in numerous authorities, and its correctness has not been, and cannot be questioned. That proposition may be thus stated: Mere passiveness, or mere delay in suing the principal debtor, or in the prosecution of execution against him after judgment, will not discharge the surety. The duty of active diligence in the prosecution of suits, or of execution against the principal, can be devolved on the creditor by the surety, if he desired, by requesting it. But, if he is himself passive—if he does not, by preferring the request, quicken the creditor into activity, there is no room for, or justice in his complaint, of the inaction of the creditor, which his own may have induced.

There are circumstances, however, in which the creditor cannot be inactive, without being unjust, and wanting in good faith to the surety. In all such cases, it must be supposed that he intends to discharge the surety; or, if that intention cannot be presumed, his inaction, to which the surety does not assent, operates as a discharge of the latter, in courts of law, or of equity. An undisputed equity of the surety is, on payment of the debt, to stand in the place of the creditor, as to all securities which the creditor may hold, or acquire, for the payment of the debt; and he is entitled to all the benefit from them, which the creditor could have derived.—*Cullum v. Emanuel*, 1 Ala. 23; *Foster v. Athenæum*, 3 Ala. 302; *Ohio Life Ins. & Trust Co. v. Ledyard*, 8 Ala. 866; *Fawcetts v. Kinney*, 33 Ala. 261; *Lyon v. Leavitt*, 3 Ala. 430; *Knighton v. Curry*, MSS. It follows, that the creditor is

bound to exercise reasonable diligence in the preservation of such securities; and if, by his negligence, they are lost, or, if he should disable himself from surrendering them to the surety, on payment of the debt, the surety is discharged, to the extent to which the securities, if made available, would have extinguished his liability.— *Cullum v. Emanuel, supra; Hayes v, Ward,* 4 Johns. Ch. 123; *Commonwealth v. Miller,* 8 Serg. & R. 452; *Everley v. Rice,* 20 Penn. St. 297; *Baker v. Briggs,* 8 Pick. 122.

The principles defining, in particular circumstances, the good faith which the creditor must observe towards the surety, aid materially in determining what are his duties under other circumstances, in which he may have the means of obtaining payment from the principal. *Good faith* is not a mere absolute, inflexible phrase, existing of and by itself. It is a *relative term,* and must always be considered in reference to the relation of the parties—the confidence existing, or which may be justly reposed, and the circumstances surrounding them, when it may or may not require the one party or the other to act, or a want of it may be deduced from inaction. A creditor may not have in his possession, or under his control, property or effects, which he has the right to retain for the payment of the debt, and to which right the security would be entitled on payment made by him. Having them, as we have seen, the law compels him, if he would preserve the liability of the surety to him, to good faith and reasonable diligence, in keeping and making them available. The payment of the debt by the principal, to whom the consideration has moved, and who is primarily liable, and bound to indemnify the surety, if he is compelled to make payment, is the great, controlling object in view. Now, if the principal tenders payment in full, after the debt is due, the creditor is bound to accept it, or the surety will be discharged. It is bad faith towards the surety, on the part of the creditor, to refuse; for he may thereby invert the order in which principal and surety are liable, as between themselves; and he changes the nature and character of the liability of the surety, compelling him to guarantee for a further and additional period of time the ability of the principal to make the payment. The tender having been made, the relation of the creditor and principal is changed—the only duty of the principal is to keep the tender open, ready for the acceptance of the creditor whenever he manifests it. If he is sued by the creditor, he may bring into court the sum tendered, without any accruing interest, or compensation for the forbearance during the intervening period. There is, in effect, a new loan to the principal, payable on demand, with-

out interest, to which the surety is not a party, and gives no assent.—Brandt on Suretyship, § 295, and authorities cited in note. We speak now of cases in which there is a formal tender, and a refusal to accede to it by the creditor, which would constitute a defense for the principal, if he kept it open and ready for acceptance.

There is another class of cases, which the present case more nearly resembles, in which there may not be the form-alities of a tender, and no fact or circumstance affording the principal any defense against the claim of the creditor, or which places them in the relation of adversaries. There may be an offer of payment, which the principal may, at the request of the creditor, and for his ease and accommodation, forbear from converting into a formal tender, absolving him from liability for future interest, and for the costs of suit, if he kept the tender open. To this class belongs the case of *Clark v. Sickler*, 64 N. Y. 231, referred to by the chancellor. The principal, Mott, then being solvent, but subsequently becoming insolvent, offered to pay the debt; but the creditor declined to receive payment, giving no other reason than that he had no use for the money, and requested Mott to keep it; to which he assented. It was held, that the surety was not discharged; that the indulgence to the surety was merely gratuitous, not compelling the creditor to delay for any definite period of time, and not disabling him from suing, or taking any other step for the payment of the debt the surety had a legal right to require him to take.

There is an obvious distinction between that case and the present. If the surety had immediately paid the debt, Mott being solvent, his remedies for reimbursement would have been equal to any the creditor could have pursued. In this case, the principal was dead, and his estate insolvent. If the surety paid the debt, he would have been a mere general creditor of the principal, entitled only to share with other like creditors in the distribution of the assets, diminished, as they must be, by the payment of preferred claims. If the creditor had accepted payment, as proposed by the adminis-tratrix, and as it was her right to propose, and as he had the right of accepting, the debt would have been extinguished in full, and without offending the rights of other creditors, whether preferred or general.—*Pitcher v. Patrick*, Minor, 321; *Perrine v. Warren*, 3 Stew. 151; *Godbold v. Roberts*, 7 Ala. 622. In his transactions with the administratrix of the principal, good faith to the surety required, that the creditor should not be unmindful of, and indifferent to, the injury he was directly, and for no assigned reason, inflicting of his own voli-tion. It is a duty the creditor owes the surety, in his deal-

ings with the principal, to protect, so far as he can consistently with the preservation of his own rights, the rights and interests of the surety. Their right and interest is indeed the same—the performance of the contract, or the payment of the debt—the right of the creditor to payment or performance from principal or surety, one or both—the right of the surety to payment or performance primarily by the principal. A creditor, who voluntarily interposes obstacles, which prevent the surety from pursuing the creditor according to the remedies the law affords him, would not be allowed to recover of the surety. If he declines or refuses accepting payment from the principal, when it is offered, and the means of making the payment are in his own hands, which he surrenders to the principal, though he could rightfully retain them, and he knows that the result of his conduct will inflict irreparable loss on the surety, it is difficult to abstain from imputing to him a want of *good faith*, or of distinguishing between his conduct and an interposition of obstacles preventing the surety from being fully indemnified. The liability of the surety, which could be immediately extinguished, is, without his assent, prolonged. Not only is it in this case prolonged, but the death and insolvency of the principal in fact increases its burdens; for he can not obtain from the estate of the principal full indemnity, when the creditor may elect to compel him to payment.

As the case is now presented, without any explanation of his conduct from the creditor, it is a little difficult to avoid the inference, that there was a design on his part to fasten on the property of the surety a liability for the debt, in ease of the estate of the principal. If that be true, there can be no doubt the law condemns his conduct, and relieves the surety, whose rights and interests he was bound to respect, and compels him to look for payment to the principal, whom he intended to favor at the expense of the surety. In *Sears v. Van Dusen*, 25 Mich. 351, the holder of a promissory note refused to receive payment, when tendered by the makers, and delayed its collection until they became insolvent. This conduct, it was held, discharged the payee, who had guaranteed unconditionally the payment of the note, and whose relation is not distinguishable from that of a surety.—*Donley v. Camp*, 22 Ala. 659. It is to be remarked of this case, that there was no formal tender, changing the condition of that of the makers to the duty of keeping the tender open for the acceptance. There was a mere offer of payment (without presenting the money, and without evidence that the makers then had it, save so far as it could be inferred from their credit and business), which the holder declined, because he

did not need the money. It was for his ease and accommodation, that the payment was not made.

In *McQuesten v. Noyes*, 6 N. H. 19, there was an offer of payment by the principal; but the creditor did not accept it, and made a mere general agreement that he would wait for payment, and the principal could retain the money. The court regarded the transaction as a new loan of the money, to which the surety was not a party. In *Saille v. Elmore*, 2 Paige, 497, it is said by Ch. WALWORTH, that a surety will be discharged by any arrangement or dealing between the principal debtor and the creditor, which operates as a fraud on the surety; "as if the money had been offered to the creditor, at the day it fell due, or afterwards, and he had, without the consent of the surety, requested the debtor to retain it longer, this would operate as a fraud upon the surety, and discharge his liability." In *Joslyn v. Eatman*, 46 Vt. 258, there was a tender of payment by the principal, which the creditor declined receiving; and it was held, that the surety was discharged. The tender was of a character which would have discharged the principal, if he had kept it open; and as it would have discharged him, it discharged the surety, whose obligation was accessorial—he could not be compelled into the new relation of a guarantor, that the principal would keep it open for the creditor, when he chose to manifest a willingness to accept it. To the same effect are the cases of *Johnson v. Ivey*, 4 Cold. (Tenn.) 608; *Hayes v. Joseph*, 26 Cal. 535; *Curiac v. Packard*, 29 Cal. 194.

There is another class of cases, which seem to be the subject of a conflict of decision: when a creditor, having in his possession, or under his control, the means of satisfying the debt, yet chooses not to make the appropriation, and voluntarily parts with them. It may be conceded that, ordinarily, a creditor is not bound to assert and exercise the right, not existing at common law, conferred by statutes, of setting off the demand or debt he may have against the principal and surety, against a demand or debt which may be due from him to the principal. The assertion of such right might involve him in litigation with the principal, into which it may not, in the absence of peculiar circumstances, be his duty to enter. The failure to assert the right, compelling suit by the principal, can be no more than his mere passiveness, in the absence of peculiar circumstances, in pursuing legal remedies; for the plea of set-off is in its essence a cross-action. To this class belong the cases of *Glazier v. Douglass*, 32 Conn. 393; *Hollingsworth v. Turner*, 44 Ga. 11; *Beaubien v. Storey*, Speer's Eq. 508, to which we have been referred. We do not dissent from the conclusion reached in these

cases; nor do we now intend intimating under what circumstances it would be the duty of the creditor to insist on a right of set-off against the principal, for the ease of the surety.

The present case stands on a different ground : there was no necessity for the creditor to assert it—no peril of litigation with the principal, if he made the claim. The means of payment were in his hands, and it was his duty; the principal, by his proposal that they should be applied in payment of the debt, placing him in no other position than that of accepting or refusing the proposition. He had simply to retain, instead of paying the money to the principal; and the retainer operating not only to extinguish the liability of principal and surety, but his own liability to the principal. In *Law v. East India Company*, 4 Vesey, 824, the creditor had made a settlement with the personal representative of the principal, and paid to him a balance supposed to be due the principal on a settlement of his accounts as an officer of the company. Subsequently, a claim was made upon Law, as a surety on the official bond of the principal; and it was held he was discharged. The case was attended by peculiar circumstances, influencing its decision; but the underlying principle is, that the creditor must do no act, which may injure the surety; and if he does such an act, borrowing the words of the Master of the Rolls, "the court is very glad to lay hold of it in favor of the surety."

In *McDowell v. Bank*, 1 Harr. (Del.) 369, the creditor, a bank, had on general deposit moneys of the principal, sufficient to pay the debt, but permitted the principal, from time to time, after maturity of the debt, to withdraw them by checks; and the surety was held discharged. The same principle is recognized in *Dawson v. Real Estate Bank*, 5 Ark. 296–99. The cases of *Martin v. Merchants' Bank*, 6 Harr. & Johns. 235, and *Voss v. German Am. Bank*, 83 Ill. 599, assert the contrary doctrine. Assuming, as we think it must be assumed, that a bank has a lien on any balance which may be due from it to a customer, on any moneys he may have on general deposit—not moneys deposited for special purposes, of. which the bank is informed, and either expressly or impliedly consents to hold for such purposes—for the payment of a debt due to it for money borrowed, or for a debt negotiated to it in the usual course of trade; we incline to the opinion, that it can not pay such balance, or such moneys, to the principal, without discharging the surety. It has not the option to part with the security it has acquired, without the consent of the surety. We are not trammelled by the broad expressions found in *Perrine v. Firemen's Ins.*

*Co.,* 22 Ala. 575, from which we expressed dissent in *Knighton v. Curry,* MSS.

Affirming a proposition that meets the present case, we hold, that when the principal offers the creditor the privilege of retaining, from moneys the creditor has in his hands, and is about paying to him, the debt due him from principal and surety, good faith to the surety requires him to accept; and if he refuses, when he could rightfully retain, without prejudice to the rights or equities of others, the surety is discharged. There is more, in such case, than mere passiveness on the part of the creditor—there is positive action in the refusal to accept the payment. More especially must this be true, when the creditor is dealing with the principal, in the absence, and without the knowledge of the surety. The case has its unpleasant features, which, unexplained, if they do not create a presumption of sinister motive, cast suspicion on the conduct of the appellee. It is so much out of the course of ordinary transactions, for a debtor to pay his creditor a large sum of money, without the deduction of a debt the creditor expresses a willingness to receive, that, when immediate injury must result to another, it is difficult to resist the conclusion the injury was intended. No importance can be attached to the fact, that there is no averment in the bill, that the attorney, Day, had specific authority to propose receiving the debt in payment, or as money, from the appellee. It does not appear that the refusel of the appellee was placed on that ground, when the proposal was made; and if the fact is he was without authority, how far the equity of the appellant is affected, will arise on a hearing on the evidence.

The bill showing that the surety was discharged from personal liability by the conduct of the appellee, the mortgage he had executed, which passed the legal estate in the premises, and was but a further security for the payment of the debt, was also discharged. It was but an incident of the debt of the surety, and could not survive its discharge, or extinguishment, or a voluntary release of it by the creditor. Brandt on Suretyship, § 21. The principal has not been discharged; and the mortgage remains a valid security on his equity in the premises. The sale the appellee was proposing to make, was a sale not only of this equity, but of the legal estate; and there can be no doubt of the power of a court of equity to restrain it.

The decree must be reversed, the injunction reinstated, the demurrer and motion to dismiss overruled, and the cause remanded.