[No. 1,068.]

## THE CARSON OPERA HOUSE ASSOCIATION, APPELLANT, *v.* J. H. MILLER ET AL., RESPONDENTS.

CONTRACT OF INDEMNITY—FILING MECHANIC'S LIENS.—A covenant, in a bond, "to secure the plaintiff and keep it harmless from all liens and claims of liens" is a contract of indemnity, and is not violated by simply permitting liens to be filed. It would only be broken when plaintiff was actually damnified by reason of liens or claims of liens.

MECHANICS' LIENS—WHEN PROPERTY OWNER CAN NOT WITHHOLD MONEY DUE CONTRACTORS.—In construing the statutes relating to mechanics' liens: *Held*, that plaintiff was not authorized to withhold any part of the contract price, until the suits to enforce the liens were pending, and that it could not refuse to pay money according to the contract until the contractors were in default.

IDEM—LIABILITY OF SURETIES.—If plaintiff had paid the contractors according to their agreement it could have held the sureties, although when the payments were made, suits to enforce liens had been pending, or if at that time plaintiff had suffered damages by compulsory satisfaction of liens filed.

IDEM — FAILURE TO MAKE PAYMENTS TO CONTRACTORS — RELEASE OF SURETIES.—The failure of plaintiff to pay the contractors according to the terms of the agreement, the contractors not then being in default, and the application of the money due the contractors to the satisfaction of liens filed before the completion of the contract, released the sureties upon the contractors' bond.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion.

*R. M. Clarke* and *T. Coffin*, for Appellant:

I. The failure of plaintiff to make the payments at the time specified in the contract, is not such a violation of the contract as will discharge the sureties. (Brandt on Suretyship, secs. 296, 345.)

II. After the liens were filed in the recorder's office, plaintiff had the right under the statute to retain any sums due upon the contract and apply the same in satisfaction of the liens.

*C. S. Varian*, for Respondents:

I. The question is whether the plaintiff has departed from its contract with the sureties. (*Quillen* v. *Arnold*, 12 Nev. 234; *Bragg* v. *Shain*, 49 Cal. 134; *U. S.* v. *Howell*, 4 Wash. C. C. 620; *Calvert* v. *Soudon Dock Co.*, 2 Keen, 638; Brandt on Suretyship, secs. 79, 80, 102, 345.)

II. The provision of section 10 of the lien law of 1875 is no part of this contract as claimed by plaintiff. (2 Pars. Con. 515; Bish. Con., secs. 573, 603.)

III. The contract was not to prevent the filing of liens,

but to save harmless against the results of such filing. There is a manifest distinction between an indemnity against liability and the consequences of the liability. (*Thompson* v. *Taylor*, 30 Wisc. 68; *Jones* v. *Childs*, 8 Nev. 121.)

IV. Payment at the time and in the manner specified was a condition of the contract assumed and to be performed by plaintiff. It must show performance. No demand by the contractors was necessary. (2 Pars. Con. 636; Bish. Con., sec. 700.)

V. All doubts are generally resolved in favor of the surety. (*Stull* v. *Hance*, 62 Ill. 52.)

By the Court, LEONARD, C. J.:

Respondents, Miller and Cook, entered into a contract with appellant, dated April 27, 1878, whereby the former agreed, within three months from that date, to fully erect, construct, and finish, with first-class material, to be furnished by them, a theater or opera building, in strict accordance with certain plans, details, drawings, and specifications adopted by the parties; also, to secure appellant and keep it harmless from all liens and claims of liens for material or labor upon said building, under the laws of the state; also, to execute and deliver to appellant a bond in the sum of ten thousand dollars, with sufficient sureties, conditioned that said Miller and Cook should perform the terms and conditions of said contract on their part; and appellant agreed to pay said Miller and Cook therefor the sum of ten thousand one hundred and fifty-six dollars, as follows: Five hundred dollars each week, after two weeks from the date of said contract, until the said sum should be fully paid. On the same date a bond was executed, as agreed, with Miller and Cook as principals, and respondents, Hatch, Hymers, Marsh, Smith, Clark, and Hoole, as sureties.

It is alleged in the complaint that "the said plaintiff performed each and every of the covenants and stipulations as in the said contract set out, and paid to the said J. H. Miller and Frank Cook the several sums and all the money mentioned in said contract, according to the terms and conditions of the said contract, and at the times therein speci-

fied, except as follows: On or about the —— day of ——, A. D. 187–, and whilst the said Miller and Cook were still engaged in and about the construction of said building, under said contract, the liens hereinafter mentioned were filed in the office of the county recorder of said Ormsby county, after which date the said Miller and Cook, nor either of them, made any demand upon plaintiff, or application for the payment of any further sums of money thereafter accruing upon said contract, or then due thereon, but left the money accruing upon said contract, to wit: the sum of one thousand four hundred and seven dollars and seventy-three cents, in the hands of plaintiff, which sum of money so accruing and remaining in the hands of plaintiff, the plaintiff was at all times ready and willing to pay upon the said contract, according to the stipulations thereof, and which said sum of money not being demanded or called for, the plaintiff applied in part satisfaction of said liens in the manner hereinafter particularly set forth."

It is then alleged that said Cook and Miller did not save and keep plaintiff free or harmless from liens for material and labor upon the said building under the laws of the state, but that, on the contrary, they suffered and permitted two persons named, to acquire, file, and hold liens against said Opera House building for material furnished and used in and about the construction thereof, in the aggregate sum of two thousand eight hundred and seven dollars and seventy-three cents, which said liens were decreed against plaintiff and its said building on the twenty-seventh day of March, 1880, and which said sum, together with necessary costs and attorney's fees, amounting to four hundred and fourteen dollars and eighty-five cents, plaintiff was afterwards compelled to pay, and did pay, less the sum of one thousand four hundred and seven dollars and seventy-three cents, paid out of moneys in plaintiff's hands belonging to said Cook and Miller, and due to them upon said contract, as before stated.

This action is to recover one thousand eight hundred and fourteen dollars and eighty-five cents, which plaintiff was

compelled to pay, and did pay, out of its own separate funds, in order to clear its building of liens.

Respondents, the sureties, alone appeared. They demurred to the complaint as follows, to wit: "That the same does not state facts sufficient to constitute a cause of action against them, or either of them. That it is ambiguous, unintelligible and uncertain in this. That it appears the contract of these defendants was that of suretyship. That it appears that plaintiff agreed to pay the full sum of ten thousand one hundred and fifty-six dollars, in installments of five hundred dollars each week, after two weeks from April, 1878. That it failed to so pay to the contractors said sum, but retained one thousand four hundred and seven dollars and seventy-three cents thereof, in violation of said contract, it appearing that there was no obligation on the part of the contractors to demand the same, and it does not appear that plaintiff ever offered to pay the same, or that these defendants, sureties, ever knew or consented to such violation of the contract. It appears that plaintiff had no right to make the application of the moneys as alleged."

The court sustained the demurrer. Plaintiff refused to amend, and thereupon the court ordered judgment in favor of defendants, the sureties, for their costs. This appeal is from that judgment, and it will be seen that the principal question presented is, whether the application of the fourteen hundred and odd dollars to the satisfaction of the liens, as stated, instead of paying it to the contractors according to the terms of the contract, released the sureties from their obligations upon the bond.

The only alleged violation of the contract by the contractors is in suffering the liens to be filed and foreclosed. The presumption is, therefore, that, in other respects, it was performed according to its terms. It follows that the building was fully completed on or before July 27, 1878. It is not stated when the foreclosure suit was commenced. It only appears that the decree was made March 27, 1880, and that the liens were filed before the building was fully completed, that is to say, before July 27, 1878. Under the

contract all the money was to be paid in five months and one week after about the middle of May, 1878; that is, about the twentieth of October, 1878. After the liens were filed the contractors did not demand, nor did plaintiff pay, or offer to pay, the one thousand four hundred and odd dollars according to the contract, although it was at all times ready and willing to pay the same according to its stipulations. That sum was never paid to the contractors, but it was applied in part satisfaction of the liens, on or after March 27, 1880, the date of the decree of foreclosure.

It must be borne in mind that this appeal is taken from the judgment in favor of the sureties alone, and what follows applies only to their liability. We have nothing to do with the liability of the contractors. It is necessary to settle some matters of a preliminary character before entering upon a discussion of the more important questions presented.

And first, it is claimed that the contract was broken on the part of the contractors by permitting liens to be *filed*, although appellant suffered no damage by the mere filing; that the contract of defendants was to prevent the *filing* of liens. We do not think so. We think it was purely a contract of indemnity. It was "to secure the plaintiff and keep it harmless from all liens and claims of liens." In other words, they agreed that plaintiff should suffer no harm, injury, or damage from any liens or claims of liens. It is not claimed that the *filing* was in any manner injurious. After the filing it may be said there was a *liability* for damage, but the contract did not cover a mere liability. In *Churchill* v. *Hunt*, 3 Denio, 321, it is said that, upon obligations like this, "the right of action becomes complete on the defendant's failure to do the particular thing he agreed to perform." In *Webb* v. *Lansing*, 19 Wend. 424, the covenant was "to indemnify and save harmless the plaintiff *from his liability on said bond and mortgage*, and to pay to him all costs and damages," etc. The court said: "The covenant is not simply to indemnify and save harmless *against the bond*, but it is to indemnify and save harmless the plaintiff from his *liability* on the bond." It was, therefore, held that a

cause of action arose when there was a legal *liability* to suffer damage, and that no actual damage on payment need be shown in order to sustain the action. Upon a similar bond it was so held in *Jones* v. *Childs*, 8 Nev. 125. See, also, *Thompson et al.* v. *Taylor*, 30 Wisc. 69.

We think the contract was not violated by permitting liens to be filed merely. It was broken as soon as plaintiff was in any manner actually damnified by reason of liens or claims of liens.

It is also said that there is no good reason why the sureties should insist upon a strict performance of the contract on the part of appellant, as to the five hundred dollars weekly payments, as a condition precedent to their liability, when their principals, Cook and Miller, defeated a strict performance by their negligence in not calling for payments and by their failing to prevent the filing of liens against the building.

As before stated, Cook and Miller agreed to do three things, and plaintiff agreed to do one. They first undertook to finish the building in the manner specified in the contract, and to secure plaintiff and keep it harmless from all liens and claims of liens. They also agreed to execute and deliver to plaintiff a bond, with sureties, conditioned that they should comply with the contract then made; and in consideration of the stipulations of the contractors, plaintiff agreed to pay Cook and Miller a certain amount of money at certain stated times. The building was finished and the bond was executed according to contract; but after plaintiff's failure to make payments as agreed, the latter suffered damage by reason of compulsory payment and satisfaction of a judgment foreclosing liens from which Cook and Miller undertook to keep them harmless.

It will thus be seen that plaintiff violated its contract as to making payments before there was any breach on the part of the contractors, unless it is true, as claimed by counsel for appellant, that section 10 of the lien law (Stat. 1875, 124) became a part of the bond, and that, under said section, it was plaintiff's right and duty to apply moneys not paid to the contractors in satisfaction of the liens. If we are correct thus far,

it is unnecessary to decide what the result would have been if the contract had been that no liens should be *filed*, or if it had been to the effect that plaintiff should be kept harmless from all *liability* on account of liens and claims of liens; because, under the contract which the bond was given to secure, Cook and Miller did not stipulate that no liens should be *filed*, but only that plaintiff should suffer no damage therefrom. It is not claimed that plaintiff was injured by the *filing*, and it therefore follows that defendants, the sureties, were not derelict in not preventing the same. It also follows that they are not precluded from insisting upon strict performance of the contract upon the part of plaintiff, as a condition precedent to their liability, if such is the law in relation to sureties. Nor is it true, at least as to the sureties, that it was Cook and Miller's duty to demand and call for payments. Plaintiff agreed to pay them weekly, and its duty was to do so or offer to do so. Such payment was the sole consideration of defendants' promises, and its entire burden was upon plaintiff. It was not more the duty of Cook and Miller to demand payment than it was incumbent upon plaintiff to demand of the former· that they should finish the building according to the terms of the contract. (Bishop on Contracts, sec. 700; 2 Pars. on Contracts, 636.)

It is next urged that the statute above referred to became as much a part of the contract as it would have been if incorporated in the contract, and that, under the statute, after the liens were *filed* plaintiff had the right to retain any sums of money due to the contractors and apply the same in satisfaction of such liens.

Section 10 of the statute provides that "the contractor shall be entitled to recover, upon a lien filed by him, only such amount as may be due to him according to the terms of his contract, after deducting all claims of other parties for work done and material furnished as aforesaid; and in all cases where a lien shall be filed under this chapter for work done or material furnished to any contractor, he shall defend any action brought thereupon, at his own expense; and *during the pendency of such action* the owner may withhold from the contractor the amount of money for which said lien

is filed; and in case of judgment against the owner or his property upon the lien, the said owner shall be entitled to deduct, from any amount due or to become due by him to the contractor, the amount of such judgment and costs; and if the amount of such judgment and costs shall exceed the amount due by him to the contractor, or if the owner shall have settled with the contractor, he shall be entitled to recover back from the contractor any amount so paid by him, the said owner, in excess of the contract price, and for which the contractor was, originally, the party liable."

It will be noticed that, even as between the plaintiff and Cook and Miller, the statute did not allow any portion of the contract price to be withheld from the contractors until the suit to enforce the liens was pending. But it nowhere appears in the complaint that payments were made according to the contract, up to the time the foreclosure suit was commenced. It does not affirmatively appear, therefore, that, even as to the contractors, plaintiff was justified in withholding any part of the contract price. It may be that it all became due, under the contract, before the suit was pending to enforce the liens. It was all to be paid on or before October 20, 1878, and the decree enforcing the liens, was not rendered until March 27, 1880. Under such circumstances it is not improbable, at least, that the time for payment had expired before the foreclosure suit was pending. Plaintiff having had no right, even as to Cook and Miller, to retain any portion of the contract price until the suit to enforce the liens was pending, and admitting, without deciding, that it had the same right as to the sureties, after the pendency of the suit of foreclosure, it was necessary to allege and prove, in an action against the sureties, as a condition precedent to a right of recovery, that suit was pending before any of the contract price was withheld. After admitting its obligation to make weekly payments, it was incumbent upon plaintiff to justify its failure to do so in order to hold the sureties. It invokes the statute as a justification, but fails to bring itself within its provisions; and the result is the same as though the right to withhold payment at any time had not been given.

In this connection it is proper to consider another point. It is a well-recognized principle that a surety has a right to the benefit of any security which the creditor has taken; and where a creditor has the means of satisfaction in his hands, upon which he has a lien, and which he has the right to appropriate in payment of his demand, and chooses not to retain it, but suffers it to pass into the hands of the .principal, the surety to that extent will be discharged. Outside of the statute, was it the plaintiff's duty, then, or did it have the right, to retain sufficient of the contract price to satisfy all liens, and if so, when, under the contract, could it be withheld?

We have seen that, under the statute, plaintiff was not authorized to withhold any part of the contract price, until the suit to enforce the liens was pending. It is equally plain that it could not refuse to pay according to the contract, until the contractors were in default. Plaintiff saw fit to promise to pay a certain amount weekly, upon condition that it should be kept harmless from liens, and that a certain bond should be given conditioned as above stated. How, then, could it refuse to pay as agreed, until, at least, some of the conditions of the bond or some term of the contract was broken?

Suppose, after the completion of the building according to the contract, after the liens were filed, but before the pendency of an action for their enforcement, Cook and Miller had brought suit to recover the amount due to them under the contract, and plaintiff had contested the action on the ground that liens had been filed against the building. The court would have said: "The opera house association agreed to pay on certain dates which are past, and Cook and Miller, as yet, have not failed to comply with their contract. At present, the association is in no manner harmed by reason of the liens. The contractors have not yet broken their contract, and until that occurs, payments must be made as agreed." Such being the case, it was not plaintiff's duty to the sureties, or its right, under the contract, outside of the statute, to delay payments, at least until the contract to hold it harmless from liens was broken, which

was not, so far as the complaint shows, until February, 1880. Plaintiff could have limited its obligation to pay, to the condition that no liens should be *filed*, but it did not do so. It was content to do otherwise, and its rights and duties must be tested by the terms of the contract made.

It has been held that, if the maker of a promissory note has funds on general deposit *after the note falls due*, the bank is bound to apply them in payment of the note, or the indorser is discharged. (*McDowell* v. *President, etc., of the Bank of Wilmington*, 1 Harr. (Del.) 369; *Dawson et al.* v. *The Real Estate Bank*, 5 Ark. 284.) Of the correctness of those decisions, we express no opinion. It has, however, never been held that such funds can be so applied until the note is due, or the principal fails to comply with his agreement. Until that time the depositor has full control of his money or credit. So in this case, it can not with any good reason be claimed that, outside of the statute, there was a right, as to the contractors, or that as to the sureties, there was any right or duty, on the part of plaintiff, to delay payment, at least until the contract was broken by the contractors.

But authorities are numerous to the effect that, if plaintiff had paid the contractors according to their agreement, it could have held the sureties, although when the payments were made, suits to enforce liens had been pending, or if, at that time, plaintiff had suffered damage by compulsory satisfaction of liens filed. (*Coombs* v. *Parker et al.*, 17 Ohio, 291; *Perrine* v. *Fireman's Ins. Co.*, 22 Ala. 577; *Sibley* v. *McAllaster*, 8 N. H. 390; *Hunt* v. *Bridgman*, 2 Pick. 583; *Glazier* v. *Douglass*, 32 Conn. 398; *Wright* v. *Simpson*, 6 Ves. Jun. 73; *King* v. *Baldwin*, 17 Johns. 399; *Concord Bank* v. *Rogers*, 16 N. H. 16; *Pittstown* v. *Plattsburg*, 15 Johns. 435; *Ex. of Baker* v. *Marshall et al.*, 16 Vt. 524; *Price* v. *Kirkham*, 3 H. and C., Eng. Exch. 439; *Looney* v. *Hughes*, 26 N. Y. 522.)

We now come to the principal question presented: Did plaintiff's failure to pay the contractors, as agreed, discharge the sureties? Upon similar facts, we answered this question in favor of the sureties, in *Truckee Lodge* v. *Wood*,

14 Nev. 309, and might content ourselves with the conclusion there reached, but shall pursue the inquiry somewhat further. If there is any principle well settled it is that the liability of a surety is not to be extended, by implication, beyond the terms of his contract, which is *strictissimi juris.* "To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by the change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract, and if he does not assent to any variation, and a variation is made, it is fatal." (*Miller* v. *Stewart*, 9 Wheat. 703; *Smith* v. *United States*, 2 Wall. 234.)

And in *Ludlow* v. *Simond*, 2 Cai. Cas. 58, the reason of the rule is thus plainly stated: "This rule is founded on the most cogent and salutary principles of public policy and justice. In the complicated transactions of civil life, the aid of one friend to another, in the character of surety or bail, becomes requisite at every step. Without these constant acts of mutual kindness and assistance the course of business and commerce would be prodigiously impeded and disturbed. It becomes then excessively important to have the rule established that a surety is never to be implicated beyond his specific engagement. Calculating upon the exact extent of that engagement and having no interest or concern in the subject-matter for which he is surety, he is not to be supposed to bestow his attention to the transaction, and is only to be prepared to meet the contingency when it shall arise in the time and mode prescribed by the contract. The creditor has no right to increase *his* risk without his consent; and can not, therefore, vary the original contract, for that might vary the risk." And in 2 Am. Lead. Cas. 390, it is said: "It is evident, moreover, that in order to a recovery on a contract by one man, for performance by another, there must not only have been no assent by the plaintiff to the default for which he brings the suit, but he must himself have fulfilled every condition precedent to the right of suit. * * * But this rule is wholly irrespective of the direction taken by

the consideration when executed, and applies with the same force whether the suit be against a principal or guarantor; the only difference being that the principal will be answerable on a new implied contract for whatever he actually receives, whether it be that for which he stipulated or not, while the liability of the guarantor is founded solely on the original agreement, and will not accrue unless that be pursued in every particular. The requisitions of the contract may, no doubt, be waived or varied without impairing or defeating its force or efficacy, but then the waiver by the principal can not bind the guarantor."

In *Bethune* v. *Dozier*, 10 Ga. 240, the court say: "We hold it to be the duty of the obligee to *aver* and *prove* the performance, not substantially, but literally, of the original agreement. It is a condition precedent to his right of recovery." In *Dobbin* v. *Bradley*, 17 Wend. 422, the defendant guaranteed the paper of Smith, to be *made payable at a particular* bank. Smith gave his note to the plaintiffs, in the course of business mentioned in the guaranty, but made it payable generally, or, in other words, *without specifying any place of payment.* And although the note was deposited in the particular bank, before it came to maturity, it was held that the defendant was not liable, and the court refused to go into the inquiry whether the surety had been injured, saying it was enough that the case did not come within the terms of the contract. In *Maynard* v. *Boyd*, 5 Md. 109, the court thus expressed itself: "The indorsement by the defendant of Pyfer's notes to the plaintiff was based upon the security offered by the mortgage, and therefore the mortgage may be regarded as the consideration of the agreement into which the surety entered when he consented to indorse the notes. The terms of the mortgage, therefore, must be strictly complied with by the plaintiff, in order to bind the defendant as indorser. One of these terms is, there shall be no sale of the mortgaged property until default of the principal debtor to pay the notes upon their maturity. We think this part of the contract between the several parties thereto has been departed from in the sale which has taken place under the

circumstances detailed in the evidence.    \*   \*   \*   But it may be said that, although this might have been a departure from the strict letter of the contract between the parties, yet it can not be shown that the indorsers were prejudiced thereby, or their liability enlarged.  Whether this was or was not the result of the premature sale does not vary the question.  Any dealings with the principal debtor by the creditor which amount to a departure from the contract by which the surety is to be bound, and which, by possibility, might materially vary or enlarge the latter's liability without his consent, operates as a discharge of the surety."

So, in the case at bar, the contract to pay weekly, which was the consideration of the promise of the sureties, must have been strictly complied with in order to bind them. We refrain from making other quotations, but, in addition, the following authorities will be found, upon examination, to sustain the views of this court heretofore and now expressed upon the point under consideration: *Grieve* v. *Smith*, 23 U. C. (Q. B.) 27; *Wright* v. *Russel*, 3 Wilson (C. P.) 530; *Myers* v. *Edge*, 7 T. R. 254; *Walrath* v. *Thompson*, 6 Hill, 541; *Whitcher* v. *Hall*, 5 B. & C. 270; *Wright* v. *Johnson*, 8 Wend. 513; *Walsh* v. *Bailie*, 10 Johns. 180.

If we were permitted to make the inquiry we could not know that the sureties were not injured by plaintiff's failure to make the payments as agreed.  It may be that Cook and Miller would have been able to satisfy the liens if they had been paid weekly.  It may be they required the money in other business operations, and that the loss of it so crippled them that they were unable to perform their agreement.  But speculations are useless.  The law is so plainly written on this subject that but one conclusion is possible—which is, that by plaintiff's own *laches* the sureties are released.

The judgment of the court below is affirmed.