[First National Bank v. Fidelity and Deposit Company.]

The written instrument was "the instrument sued on," and properly admitted without further proof, there being no sworn plea of *non est factum.*

Under the latitude allowed in cross-examination, and as the witness was the defendant and had testified that he did not know that the plaintiff company refused to accept the $7.50, it was not error to allow the plaintiff to test him further by asking, "You have been informed that the Sword Medicine Company refused to accept the $7.50, haven't you?"

The bill of exceptions does not show that it contains all of the evidence, and we cannot say that the court erred in rendering the judgment.

The judgment of the court is affirmed.

HARALSON, DOWDELL, ANDERSON, and DENSON, JJ., concur.

# First National Bank *v.* Fidelity and Deposit Company.

*Suit on Bond of Suretyship.*

[DECIDED JAN. 30, 1906, 40 SO. REP. 415.]

1. *Principal and Surety; Building Contractor's Bond; Discharge of Surety; Improper Payments.*—The contract between the contractor and owner being made a part of the contract of suretyship between the surety and the owner, for the faithful performance of the contract of building; and the building contract providing that payments should be made to the contractor only upon estimates and certificates of the architect, out of which certain percentages were to be reserved until the completion of the contract, a payment by the owner to the builder of these reserved percentages, and a larger payment than was authorized by the certificates and estimates of the architect, without the consent of the surety, was such a change of the contract of suretyship as discharged the surety.

2. *Contracts; Provisions; Conditions.*—The provisions in a contract of building, which was made part of a contract of surety-

ship for its faithful performance, that a certain percentage for a certain purpose should be reserved out of all estimates and certificates of the architect until the building was completed, and that payments should be made to the contractor only upon estimates and certificates of the architect, were not mere provisions to secure a completion of the building contract, but were conditions of the contract. (DOWDELL, J., dissents.)

3. *Principal and Surety; Contractor's Bond; Surety's Bond; Construction.*—Where the obligation of the surety was stated to be to secure the owner against certain mechanic, material men and other liens of like character, and hold it harmless against all such demands, and to release it from the necessity of inquiring in such matters and from the payment of such claims, such provision did not operate as a waiver by the surety of so much of the construction contract as required payments thereon to be made in a particular manner.

4. *Same; Payment to Contractor; Nature and Form.*—During the performance of the contract of building, the bank, who was the builder, kept one general account with the contractor which was frequently overdrawn several thousand dollars more than was then due, and which was paid only by being credited with the estimates and certificates of the architect as the work progressed; Held, to be a payment or payments on the contract and not a loan to the contractor from the bank; and such a payment as released the surety.

5. *Banks; Authority of President; Estoppel to Deny.*—When the proper performance of the construction contract was left by the bank in its president's hands, who passed on all orders from the contractor to the bank, and on whose order payments were made by the teller to the contractor and his material men, the bank is estopped to deny the authority of the president to do these things, in a suit by the bank against the surety of the contractor, on failure of contractor to complete his contract. (DOWDELL, J., dissents.) (Overruling *Fidelity & Deposit Co. v. Robertson*, 136 Ala. 379).

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

This was an action by appellant against appellee upon a contract of suretyship entered into between appellant and appellee as the surety of John W. Hood & Co., who had a contract to erect a building for appellant. The bond or contract of suretyship was in words and figures as follows: "The State of Alabama, Montgomery Coun-

ty. Know all men by these presents: That we, John W. Hood & Company as principal, and the Fidelity & Deposit Company of Maryland, as surety, are held and firmly bound unto First National Bank of Montgomery, in the sum of fifteen thousand dollars, for the payment of which we bind ourselves, heirs and executors, admin istrators and assigns. Sealed with our seals and dated this 7th day of March, A. D. 1901. The condition of this obligation is such that, whereas, the above-bounded John W. Hood & Co. did on the 7th day of March, 1901, enter into a contract, as original or general contractor, with said First National Bank of Montgomery to build and complete a six-story and attic fireproof building in the city of Montgomery, according to plans and specifications furnished and prepared therefor by Lockwood & Smith, architects, at and for the price of forty-four thousand dollars; and whereas, under article 1 of chapter 71 of the Code of Alabama of 1896, of force from February 17, 1898, certain liens are provided for mechanics and materialmen, and certain duties are required of owners and proprietors, in this: that if the owner or proprietor or his agent be notified in writing that certain specified material will be furnished to the contractors for use in the building or improvements on the land of the owner or proprietor at certain specified prices he shall be liable therefor, unless he objects thereto, and other provisions as to liens of mechanics and materialmen as to any unpaid balance that may be due by owner or proprietor to the original contractor, and for demanding of the original contractor the complete list of all materialmen, laborers, and employes who have furnished any material, or have done any labor or performing any service, or who may be under any contract or engagement to furnish any material or to do or to perform any service to such contractor for or on such building or improvement, with the terms and price thereon, and for retaining and paying such claims, for any unpaid balance remaining in the hands of the owner or proprietor, that any such sum may be retained and paid such mechanic, laborer, or materialman by the owner or proprietor if he wishes, and shall be a credit on this contract as if paid to the

contractors; and whereas, said John W. Hood & Co., as said original contract calls for, have agreed to furnish all the material and labor required in the erection and completion of said building. herein referred to and described, at and for the price hereinbefore recited and according to the plans and specification hereinabove referred to, and to erect and complete said building according to said plans and specifications: Now, therefore, we, the undersigned, agree to secure and hold harmless the First National Bank of Montgomery against all contracts, claims, and demands of all materialmen, laborers, or employes who may furnish any material or thing or may do or perform any service, or who may be under a contract or agreement to furnish any material or thing or to do any labor or perform any services to said Hood & Co., as aforesaid contractors, for or on such building or improvement, and to exempt said First National Bank of Montgomery, owner and proprietor, from making any demands of the contractor for a complete list of all materialmen, laborers, and employes, from retaining in his hands any balance due, and to pay any claim of mechanics, laborers, and materialmen of which he may have notice, or from any demand or liability whatsoever to any other person than Hood & Co., the original contractors herein. We, the undersigned, promise and agree that the said Hood & Co. erect and complete said building according to said plans and specifications above mentioned, and, further, this bond shall cover and include any sum owing by said contractors as liquidated damages for a failure to complete contract in the specified time. But if the said Hood & Co. shall secure and hold harmless the said First National Bank of Montgomery as aforesaid, from all loss, liability, and damages as hereinbefore particularly mentioned and set forth, this agreement to be void; otherwise, to remain."

The building contract and specifications are also set out in full. The part of said contract relating to the payments by the bank to the contractors is in following words: "Payments are to be made upon certificates of the architect and upon estimates made for material when delivered at and for said building, from which shall be

reserved 25 per cent. of the cost of such material, and upon like certificates of the architect and their estimates made, upon the 1st of each month, payments are to be made for work erected into said building, less what has been previously paid for the same as materials, and from which shall be reserved out 10 per centum thereof. And the said 10 per cent. so reserved out of sum so paid for material and for work erected into said building is to be paid after the work shall have been completely finished, delivered, and accepted by the party of the first part, provided that a certificate shall be obtained by the party of the second part from the clerk of the office where liens are recorded, and signed by said clerk, testifying that at the time when the payment is due the building is free from all liens and claims chargeable to the party of the second part."

In reply to the complaint, the defendant set up that it was suretly, and that in violation of its agreement the terms of payment set out in the contract of building upon the terms of which defendant agreed to become surety and did become surety for the builders were violated by the bank, in that it made the payment in utter disregard of said contract; wherefore the surety was released. The evidence tended to support the plea strongly.

WATTS & SON and HORACE STRINGFELLOW, for appellant.—The real question to be decided is raised by the pleas to which demurrers were overruled and by these overruled demurrers. The position taken by appellant is that there must have been an alteration of the contract of construction, and not a mere breach, in order to discharge the surety.—*Fidelity & Deposit Company v. Robertson,* 136 Ala. 379; *Miller v Stewart,* 9 Wheat., 680; *White v. Life Association,* 63 Ala. 419; *Stephens v. Elver,* 77 N. W. 737; *Benjamin v. Hilliard,* 23 How. 149; *Fertig v. Bartles,* 78 Fed. 867; *Hand Mtg. Co. v. Marks,* 36 Ore. 523; *Saint v. Wheeler, et al.,* 95 Ala. 376; *Allen v. Greene,* 19 Ala. 42; *Perrine v. Fireman's Insurance Company,* 22 Ala. 575; *Fielder v. Verner,* 45 Ala. 436; *Wiek v. Pugh,* 92 Ill. 386; *Beard v. Shantz,* 70 Miss. 381;

[First National Bank v. Fidelity and Deposit Company.]

*Brennan v. Clarke,* 29 Neb. 385; *Cambridge v. Hyde,* 131 Mass. 77; *Risse v. Hopkins, Planing Mill Co.,* 55 Kas. 518; *Roach v. Summers,* 20 Wall. 165; *Maree v. Ingle,* (Ark.) 61 S. W. Rep. 369; *Foster v. Gaston,* (Ind.) 23 N. E. Rep. 1095; *Cochran v. Baker,* (Ore.) 56 Pac. Rep. 641; *Pickard v. Shantz,* 12 South. Rep. 544; *Sneed's Exec. v. White,* 3 J. J. Marsh, 526, (20 Am. Dec. 175); *Mayes v. Lane,* 76 S. W. Rep. 401; *Smith v. Molleson,* 148 N. Y. 241; *Hand Mfg. Co. v. Marks,* 36 Ore. 523; *Preston v. Huntington,* 67 Mich. 139.

The following cases sustaining the decision of the court made in the case of *Fidelity & Deposit Co. v. Robertson, supra; Mayes v. Lane,* (Ky. Ct. of App.) 76 S. S. W. Rep. 399; *Meyers v. Wood,* (Tex.), 65 S. W. Rep. 671; (S. C. in 26 Tex. App. 591), in effect overruling *Ryan v. Morton,* 65 Tex. rendered fifteen years before; *Baubien v. Storey,* 1 Spears Eq. 508; *Reed v. McGregor,* 62 Minn. 94; *Second Nat. Bk. of LaFayette v. Hill,* 76 Ind. 223; *Casey v. Gunn,* 29 Mo. App. 14.

It is said as a reason why appellee is discharged as surety, that Hood & Co. drew on this deposit account and appellant paid their drafts, to pay for material and labor used in the performance of the contract, and that thereby appellant loaned to Hood & Co. money in advance of the estimates certified to by the architect, and by such action the appellant changed the contract between it and the appellee and released the appellee as the surety of Hood & Co. Such a contention is wholly untenable.—*Foster v. Gaston,* 123 Ind. 96; *Fidelity & Deposit Co. v. Robertson,* 136 Ala. 379; *Smith v. Molleson,* 148 N. Y. 241; *Board of Control v. Branham,* 57 Fed. Rep. 179; *Stephens v. Elver,* 77 N. W. Rep. 737; *Bell v. Paul,* 35 Neb. 240; *Robinson v. Hagenkamp,* 52 Minn. 101; *DeMattos v. Jordan,* 15 Wash. 378; *Mayes v. Lane,* 76 S. W. Rep. 399; *Casey v. Gunn,* 29 Mo. App. 14; *Hand Mfg. Co. v. Marks,* 36 Ore. 523; *Meyers v. Hood,* 65 S. W. Rep. 271; *Baubien v. Storey,* 1 Spears Eq. 508; *Maree v. Ingle,* 61 S. W. Rep. 369; *Getchell & Martin L. Co. v. National Surety Co.,* 100 N. W. Rep. 558.

The officers of the bank were without authority to make the alleged agreement with Hood & Co|—*Spyker v. Spence,* 8 Ala. 341; *Steiner & Lobman v. Steiner L. & L. Co.,* 120 Ala. 128; Clarke on Car. pp. 493-4; 21 Ency. Law (2d Ed.) 353; Ib. 912; *Potts v. Wallace,* 146 U. S. 689; *West National Bank v. Armstrong,* 152 U. S. 346; *Sullivan v. L. & N. R. R. Co.,* 128 Ala. 99; 104 Ala. 62; 63 Vt. 581; 124 Mass. 197.

STEINER, CRUM & WEIL and J. M. CHILTON, for appellee.—By the various demurrers interposed to the several pleas, and for the overruling of which errors are assigned, appellant insists that the provisions in the construction contract required payments to be made upon the certificates of the architects, and upon estimates for materials when delivered at and for the building, and upon the certificates made and estimates on the first of the month, payments should be made for work upon said building, less what had been previously paid for materials, from which there should be reserved ten per cent thereof, which amount so reserved should be paid only *after the work was completed, delivered, accepted, etc.,* was a stipulation solely for the benefit of appellant, and with which the surety had no concern. We shall treat the demurrers to the pleas as presenting that question.

Prepayment, in the absence of the estiamtes and certificates required by the contract, is the *gist* of the pleas filed in this aspect,—some of them stating in addition, that material was paid for by the Bank before it reached the building. The pleas along this line,—prepayment in the absence of estimates and certificates, contract—are, in the their nature, so kindred that they will, necessarily in the main be discussed together.

The conclusion and ruling of the learned judge who tried this cause in the court below, is well night universally and uniformly supported by the text writers and courts of last resort;—English and American,—among which are the following:—Lloyd on Building Contracts, § 39; Brandt on Sur. & Guar., (3d Ed.), §§ 416, 427, 748; Emden on Building Contracts, p. 61; *Culvert v. London*

[First National Bank v. Fidelity and Deposit Company.]

*Dock Co.,* 2 Keen, 638; *General Steam Nav. Co. v. Rolt,* 6 C. B. (N. S.) 550; *Holme v. Brunskill,* L. R. 3 Q. B. Div. 495; *Praric State Bank v. United States,* 164 U. S. 227, (41 L. Ed. 412); *Miller v. Stewart,* 9 Wheat. 680, (6 L. Ed. 541); *United States v. Freel,* 186 U. S. 309 (46 L. Ed. 1177); *Shelton v. American Surety Co.,* (C. C.) 127 Fed. 736; *Shetlon v. Same,* (C. C. A.) 131 Fed. 210; *veigler v. Hallahan,* (C. C. A.) 131 Fed. 205; *Board of Commrs. v. Braham* (C. C.) 57 Fed. 179; *United States v. McIntyre,* (C. C.) 111 Fed. 590; *United States v. Am. Bond & Tr. Co.,* (C. C. A.) 89 Fed. 925; *May v. National Bank,* 111 Ala. 510; *Anderson v. Bellinger,* 87 Ala. 334; *Prim. v. Hammel,* 134 Ala. 625; *Brown v. Johnson,* 127 Ala. 292; *Crescent, etc. v. Handley,* 90 Ala. 486; *City Council v. Hughes,* 65 Ala. 201; *Moses v. Home, etc.,* 100 Ala. 465; *McKay v. Dodge,* 5 Ala. 388; *McKee v. Griffin,* 66 Ala. 419; *White v. Life Association,* 63 Ala. 419; *Bragg v. Shain,* 49 Cal. 131; *Keissig v. Allspaw,* 41 Cal. 231; *Chester v. Leonard,* 68 Conn. 495, 38 Atl. 13 L. R. A. 418; *Gato v. Warrington,* 19 South, 883; *Bethune v. Dozier,* 10 Ga. 235; *Finney v. Condon,* 86 Ill. 79; *McConnell v. Poor,* 113 Iowa, 133; *College v. Meagher,* 11 S. W. 608; *Orleans, etc. v. International,* 37 So. Rep. 10; *Claggett v. Salmon,* 5 G. & J. 314; *Mahew v. Boyd,* 5 Md. 102 (59 Am. Dec. 110); *Backus v. Archer,* 109 Mich. 666 (67 N. W. 913); *People v. Powers,* 108 Mich. 339; *Fidelity M. L. Association v. Dewey,* 54 L. R. A. 945; *Simonson v. Grant,* 36 Minn. 439; *Pickard v. Shaltz,* 12 So. Rep. 544; *Moore v. Fountain,* 8 So. Rep. 509; *Evans v. Graden,* 125 Mo. 72. (28 S. W. Rep. 439); *Taylor v. Jeter,* 23 Mo. 244; *Burleigh v. Hitt,* 54 Mo. App. 272; *Bell v. Paul,* 35 Neb. 241, (52 N. W. Rep. 1110); *Association v. Miller,* 16 Nev. 327; *Lodge v. Wood,* 14 Nev. 293; *Barner v. Barrow,* 61 N. Y. 39; *Welch v. Hubschmitt,* 38 Atlantic Rep. 824; *Wehrung v. Denham,* 42 Ore. 386; *Fitzpatrick v. McAndrews,* 2 Pa. Dist. 713; *Greenville v. Ormond,* 51 S. C. 121, (28 S. E. 147); *Ryan v. Morton,* 65 Texas 258; *Henry v. Surety Co.,* 21 Texas Citv. App. 590; *Peters v. McKay,* 20 Wash. 172; *Cowdery v. Hahn,* 76 Am. St. Rep. 923; *Leonard v. Jackson Co.,* 25 W. Va. 45.

The attorneys for appellee also discussed the cases cited by appellants bearing upon these issues.

On Baldwin's authority to make the contract with Hood & Co., the following cases are cited.—*Bibb v. Hall,* 101 Ala. 79; *Talladega etc. v. Peacock,* 67 Ala. 253.

SIMPSON, J.—This was an action by appellant against appellee, based upon a bond which appellee executed March 7, 1901, as surety for John W. Hood & Co. to secure the faithful performance of a contract by which said Hood & Co. had agreed to furnish materials and erect a certain building in Montgomery, Ala.

The first point raised by the pleadings, and strenuously and ably argued in the briefs of both the appellant and appellee, is whether or not, in a case like this, where the building contract specifies that payment shall be made as the work progresses upon certificate of the architect, and estimates for material when delivered, reserving 10 per cent. to be paid only when the work is completed, and the owner undertakes to pay in a different way, as by advancing money to the contractor to be repaid as the estimates and certificates are made, and paying for lumber before it is delivered, without regard to the 10 per cent. reduction, the surety is released. The appellant relies upon the case of *Fidelity & Deposit Company of Maryland v. Robertson,* 136 Ala. 379, 34 South. 933, and especially the remark of the court, on page 409 of 136 Ala., page 943 of 34 South., to the effect that the provision of the contract, authorizing the temporary reservation from payments of 15 per cent. of estimated earnings, was solely for the benefit of the original contractor, and one which, in the absence of any prohibition in the bond, the original contractor might waive without the consent of the surety." It is a maxim of the law that all parties, whether principal or surety, who reduce their contracts to writing, have a right to insist upon the terms of the contract as written, and it does not lie in the power of the courts to say that, although a party has contracted to do one thing, yet he has done something else, which is more beneficial to the other party, and is therefore entitled to the enforcement of the contract.

When a party enters into a contract to do certain work and on certain terms, and procures a surety to guarantee the faithful performance of the work, the surety necessarily contracts with reference to the contract as made. The terms of the contract become a part of the terms of the bond. Otherwise the surety could never know what obligation he was assuming. The contracts were made at the same time. The surety's bond recites that, whereas the building contract has been made, etc. Then, in the absence of any explicit declaration to that effect, it is difficult to see how a court can undertake to say that certain provisions are made for the benefit of the principal alone, and can be waived or changed by him, without the consent of the surety. This is a matter, however, that has been so thoroughly discussed by the courts in England and in this country, and the trend of the best authorities is so evident, that it seems useless to go over the arguments of the courts.

The leading case in England is that of *Calvert v. London Dock Co.*, 2 Keen 638. And the Supreme Court of the United States in an able opinion by Justice White, in which he reviews the decisions of that court and others, plants itself squarely on the English doctrine, declaring that "the rulings of this court have been equally emphatic in upholding the right of a surety to stand upon the agreement, with reference to which he entered into this contract of suretyship, and to exact compliance with its stipulations."—*Prairie State Bank v. U. S.*, 164 U. S. 227, 237, 17 Sup. Ct. 142, 41 L. Ed. 312. Equally emphatic are the cases of *Simonson v. Thori* (Minn.) 31 N. W. 861; *U. S. v. Am. B. & W. Co.*, 89 Fed. 925, 930, 32 C. C. A. 420; *Backus v. Archer* (Mich.) 67 N. W. 913, and cases cited; Stearns on Suretyship, § 79, and note; 27 Am. & Eng. Ency. Law, 495. See, also, *Manatee County State Bank v. Weatherly*, 144 Ala. 655; 39 South. 988. It is unnecessary to extend this opinion by citing all the cases that could be produced, or by going over the arguments in those here cited. The declaration of the principle is clear and the reasoning satisfactory. We are compelled to hold that the court below committed no error in overruling the demurrers to the

several pleas setting up the defense mentioned. The case of *Fidelity & Deposit Company of Maryland v. Robertson, supra,* in so far as it conflicts with this opinion is overruled. The case of *Saint v. Wheeler & Wilson Mfg. Co.,* 95 Ala. 362, 10 South. 539, 36 Am. St. Rep. 210, is not in conflict with this opinion, as in that case it is distinctly stated that the claim sued on was not in any way connected with the additional duties which had been placed on the agent, and which were distinct from the duties guaranteed; that, although the agent's salary had been reduced, yet the settlement in question was based on the original contract at the original salary; also that allowing the agent to retain his wages out of weekly collections was not an alteration of the contract, as it did not provide the manner in which he was to be paid. Nor is there any conflict with the case of *White's Adm'r v. Life Association of America,* 63 Ala. 319, 35 Am. Rep. 45; for that case announces the doctrine in all its strictness in regard to the discharge of the surety by an alteration of the terms of the contract, but merely states that mere indulgence does not constitute such a change. In the case of *Perrine v. Fireman's Ins. Co.,* 22 Ala. 575, the defendant was surety on a note given by a stockholder to the bank, and the only point decided by the court was that the fact that the corporation had the power, under its charter, to prohibit the transfer of the stock of the stockholders, who were indebted to it, did not make it obligatory on it to do so in order to protect the surety. The case of *Stephens v. Elver* (Wis.) 77 N. W. 737 (referred to in the brief of appellant), really indorses the general doctrine hereinbefore stated and places its decision distinctly upon the ground that "the alleged advances were so inconsiderable and trifling in amount as not to constitute a material variation of the contract, and upon the further fact that the plaintiff is not in a position to insist upon release, because it was at his suggestion that Pickering made the request for an advance." Page 740. Without passing upon the question as to whether that court was right in undertaking to say that the alteration was not material, we only cited it to show that it does not militate against the position taken

in his opinion. We do not say that there may not be some slight devitation, so clearly immaterial as not to affect the liabilities of the parties, but that is not this case. In the case of *Smith v. Molleson,* (N. Y.) 42 N. E. 670, which is greatly relied upon by appellant, the decision was really based on the construction of the contract; the court holding that, in making payments, the value of the stone, which had been quarried, but not placed in the building, should be taken into consideration, and under that construction there had been no overpayment. The court affirms the doctrine that the surety "has the right to insist upon the strict performance of any condition for which he has stipulated, whether others would consider it material or not." Page 670, second column. Allusion is also made to the special provisions in that contract to the effect that the owner was "at liberty to make any alterations, deviations, additions, or omissions from the said contract," but the court says "it is not important to consider the real scope of this clause."

Without subscribing to any intimations of the court on that point, it may be remarked that the corresponding. provision in the contract now before this court differs from that in the important particular that, after referring to the alteration, etc., it goes on to state that it shall not "make void the contract, but the difference shall be added to or deducted from the amount of the contract, as the case may be, by a fair and reasonable valuation," showing clearly that the allusion is not to the manner of payment, but to the alteration in the work. While, as between the original parties to the contract, either party may waive any of its provisions, yet when a third party becomes interested in the contract by binding himself to its faithful execution, the contract becomes a part of his obligation, and its provisions cannot be waived so as to affect his interest without his consent. We hold that under the contract and bond in this case, which constitute one transaction, if the plaintiff did not pay for the work and the material in the manner provided by the contract, but instead thereof, by an arrangement made either at the time the contract was

made, or afterwards, with the contractor, without the consent of the surety, permitted the contractor to overdraw his account, so that considerable amounts of money were paid to him before any certificates were issued by the architect, and the material was paid for, without any estimate and before delivery, and without any regard to the retention of the percentage required, trusting to the certificates and estimates to be credited on said general account, then this was such a departure from the terms of the original contract as to release the obligation of the surety. The cases referred to by appellant's counsel, which hold that, where a collateral security has been released, or lost, without the consent or fault of the surety, said surety is released only *pro tanto*, do not apply to a case like this, even as to the 10 per cent. reserve. Said provision in this case is one of the conditions of the contract, and it cannot be said that it is a mere security for the payment of such money; but it is reserved as much as a stimulus to insure the completion of the work by the contractor, as for a mere security of the amount of money.

Appellant next insists that by the terms of the bond the appellee waived so much of the construction contract as required payments to be made upon certificates and estimates, and he bases that construction on that part of the bond which recites that "whereas, under article 1 of chapter 71 of the Code of Alabama of 1896, certain liens are provided," etc., and concludes with these words, to-wit: "But any such sum may be retained and paid such mechanic, laborer, or materialman, by the owner or proprietor, if he wishes, and shall be a credit on this contract as if paid to the contractors." Appellant claims that this was an authorization to the appellant to pay all said bills, without any regard to certificates or estimates, and without reserving any per cent. We do not construe the bond in this way. The clause in question is really the conclusion of the first preamble, in which the writer of the bond is stating what he understands to be the statutes on the subject of liens of mechanics and materialmen. He goes on with another preamble, and then comes to the obligation of the appellee

to appellant, which is to "secure and hold it harmless" against all these demands, and to release it of the necessity of inquiring into these matters entirely, and from paying any such claims. It does not present a case where the parties have perfected their liens, which were guarantied against, and where the appellant had to pay them to save his property. Again, the contract and the bond being one contract, all the guaranties in the bond were conditioned on conformity to the requirements of the contract, with regard to the manner of payments, and if appellant had disregarded these it could not claim any thing of the surety. Even if the expression could bear the interpretation put upon it by appellant, authorizing appellant to pay such claims, it refers to claims presented and brought forward in the manner provided by the statute; but the further provision of the bond shows clearly that the intention of it was that appellant was not to concern itself about these matters, but was simply to make payments to Hood & Co. in accordance with the contract, leaving it to the surety to hold it harmless against these.

In this connection appellant further insists that the words in the bond, "And to pay any claims of mechanics," etc., are a waiver of the requirements as to the particular manner of making payments, and an authorization to appellant to pay said items, without regard to certificates or estimates. The grammatical construction of the sentence will not admit of such an interpretation. The infiinitive "to pay" is the object of the verb "agree" in the first line of the paragraph. In other words, the surety company (with Hood & Co.) "agree" to hold appellant harmless from all these contracts, claims, etc., to exempt it from making demands for lists of materialmen, "and to pay any claims of mechanics, laborers, and materialmen," etc. It is just as if it had read, "And we agree to pay," etc., and, as if to make it clearer still, they exempt appellant "from any demands or liability whatever to any other person than John W. Hood & Co. In other words, it is clear that the intention was that appellant was not to pay anything to any one, except Hood & Co. If the materialmen said that they were not wil-

ling to furnish material on the responsibility of Hood & Co., they could have secured themselves by perfecting their liens, or appellant could have notified the surety company that the work was in danger of being delayed by these matters, and then the surety company would have been obliged to make some provision for securing the parties. Appellant did not choose to resort to its surety. but undertook to attend to the matter itself, contrary to the provisions of the contract. It is not for the court to say why the parties provided for the manner of payment and the reservation of the 10 per cent., though it is easy to suppose that it was for the purpose of having a continual stimulus to the contractors to finish the work, thus operating as a security to the surety as well as for the security of the owner. However that may be, it would be utterly futile to make these requirements, and then provide in another clause that the owner might disregard it and pay for all the material furnished, without inspection or estimate.

Coming to the facts of the case : While it is true that the president of the bank denies that there was any agreement, at the time the contract was made, that the business should be conducted as it was, which is contradicted by two wtinesses on the other side, yet the fact remains that it was conducted in that way, that the contract was not complied with in the manner of payment, nor in the reservation of the 10 per cent., and the circumstances make it very evident that there was an understanding between the parties that the money should be advanced and that the certificates and estimates should be credits (as they were) on the general accounts. The transaction bears none of the earmarks of a separate, independent loan. There was no separate account, but merely the general account. We can judge of the intention of the parties only by their acts; and the manner in which the advancements were made, in excess of the certificates and estimates and of the 10 per cent. reserve, and the estimates subsequently credited thereon, changed the contractual relations of the parties, deprived the surety of the security which it had bargained for and released it from its obligations. It is

not for the court to say why these stipulations were valuable to the surety company, though very good reasons readily occur to the mind, and the result in this case illustrates them. It is sufficient that they were a part of the contract, and according to the authorities heretofore cited the surety company had a right to demand that they complied with before it could be made liable on the bond.

The books show that the account was frequently overdrawn to the amount of several thousand dollars over the entire amount due. President Baldwin, in his letter of November 30, 1901, tells the contractors that at that time the bank had paid them more than the entire contract price. He testified that not a single estimate was paid in accordance with the contract, but that they were merely used in paying the checks drawn on said deposit account. He testified, also, that he does not know whether the items in any of the various accounts, which were paid for before the abandonment of the contract, had in fact been delivered before that time; also that all the payments for material, etc., were charged to Hood & Co. on the general account at the bank, on which the estimates were also credited as they came in. The pay rolls were paid without any certificate, estimates, or reservation. All these facts show clearly that the parties made and carried out arrangements in regard to payments entirely different from the provisions of the contract.

The appellant next raises the point that President Baldwin had no authority under the proof in the case to make the agreement for the bank to pay otherwise than according to the provisions of the contract. The president's testimony shows that the matter was in his hands on the part of the bank. It is also shown that, where orders came in, they were taken to him, and he gave a slip to the teller, and that when he was not in the teller or other officer paid them; and it shows, also, that all these payments appeared on the books of the bank, many of them showing on their face what the payments were for; and in addition to all this the bank is here suing under the contract and claiming credit for

[Anniston Mfg. Co. v. So. R'y Co.]

these payments. From these facts the court had a right to infer that the entire transaction was with the knowledge and consent of the bank.—*Bibb v. Hall & Farley,* 101 Ala. 79, 14 South. 98; *Talladega Ins. Co. v. Peacock,* 67 Ala. 254.

The judgment of the court is affirmed.

TYSON, ANDERSON, and DENSON, JJ., concur. McCLELLAN, C. J. (sick), and HARALSON, J. (disqualified), not sitting. DOWDELL, J., dissents.