(117 So. 490)

## BUTLER & GILCHRIST v. FIRST NAT. BANK OF BRANTLEY. (4 Div. 363.)

Court of Appeals of Alabama. March 20, 1928.

Rehearing Denied June 19, 1928.

W. H. Stoddard, of Luverne, and Baldwin & Murphy, of Andalusia, for appellants.

Frank B. Bricken, of Luverne, and Powell & Hamilton, of Greenville, for appellee.

SAMFORD, J. Everage owned a farm in Crenshaw county, and on June 9, 1923, executed a mortgage to the First National Bank of Brantley, conveying all crops raised or caused to be raised by him or under his direction during the years 1922, 1923, and 1924. For the year 1924 W. T. Wood cultivated a crop on the lands of Everage, and covered by the mortgage, under a contract whereby Everage furnished the lands and teams, and Wood furnished the labor, the parties to share equally in the crops when gathered. Under an arrangement made by Everage, supplies to Wood by way of advances were made by Butler & Gilchrist the appellants here. Prior to the contract between Everage and Wood, Everage owed Wood $237.50, but, as we see it, this debt had nothing to do with this case. Butler & Gilchrist made advances to Wood during the year 1924, and in the fall when the crops were gathered Wood sold the cotton raised by him to Butler & Gilchrist, who in turn sold and received the money for it, taking one-half of the proceeds as representing his interest and for which he had a lien under the statute, and which interest is not involved in this suit. The proceeds of the other one-half of the crop was paid by Butler & Gilchrist to Wood. The cotton was covered by the mortgage to the bank. It was claimed by defendants that from the proceeds of Everage's half of the crop Wood paid to the bank $200 and applied the balance to the old debt due by Everage to Wood, with and by permission of W. T. McSwain, president of appellee bank, who was the agent of the bank and conversant with the whole transaction. Under affirmative instructions from the court, the jury found for the plaintiff for the value of one-half the cotton raised by Wood during the year 1924, to wit, $430.99.

It may be said, and we so find, that the undisputed evidence discloses that the contract between Wood and Everage was one of hire, by which the legal title to the crops raised by Wood was in Everage, and Wood was a laborer with a lien on the crops to secure his one-half interest. Acts 1915, p. 112. The law has now been changed, and, since the adoption of the Code of 1923 and its promulgation by the Governor, the act above referred to has been merged into section 8807 of the Code. It also appears that by and through a mortgage to appellee bank, dated June 9, 1923, and executed by Everage, the appellee held the equitable title to the crops grown by Wood during the year 1924, and that appellants Butler & Gilchrist had notice of said lien, and with such notice purchased from Wood and resold the cotton raised by Wood, retaining the proceeds. It was also shown by the evidence beyond a quibble that Everage was and still is indebted to the bank on the mortgage above referred

to. Under the foregoing facts the plaintiff would be entitled to recover the value of one-half the cotton raised by Wood and sold to defendants, unless plaintiff authorized the sale by Wood, or had in some way estopped itself. Hattemer v. Davis, 206 Ala. 613, 91 So. 321.

It is contended by defendant that the testimony of the tenant Wood makes the question of waiver one for the jury. The testimony of Wood on this subject is:

"Everage did owe me some money during the year 1924. * * * Mr. W. P. McSwain, the president of the plaintiff bank, did tell me to sell all the cotton necessary to pay what Everage owed me. The checks for which I sold the cotton, with which to pay myself, were paid by plaintiff bank."

 It is also argued in brief that the testimony of this witness shows that the plaintiff was paid $200 of the proceeds of the Everage cotton. This last is not borne out by the record. Wood's testimony on this point is that he paid the bank $200 in 1923 for Everage. The cotton here involved was raised in 1924. This eliminates every question except the authority of McSwain, the president of plaintiff bank, to waive the lien of the bank, by what he said to Wood, if he said so. McSwain denies it, but that can have no effect upon the decision here. Officers of a bank have authority to act in accordance with the general usage, practice, and course of their business, and, when thus acting, they bind their bank in favor of third persons who have no knowledge of any narrower limitations of their power. First National Bank of Montgomery v. Fidelity, etc., Co. 145 Ala. 335, 40 So. 415, 5 L. R. A. (N. S.) 418, 117 Am. St. Rep. 45, 8 Ann. Cas. 241. But, unless specially empowered to do so, an officer of a bank has no inherent power to release, otherwise than in due course and on payment, debtors of the bank. The foregoing applies equally to presidents and cashiers. And, when the president of a bank undertakes to release from obligation one who is indebted to the bank on a valid claim, he is outside the scope of his apparent authority, and is acting not according to usage, practice, or usual course of business, but in plain disregard of the bank and its interest. This he cannot do. 3 R. C. L. p. 448 (75); Id. 442 (69); State Bank v. Forsyth, 41 Mont. 249, 108 P. 914, 28 L. R. A. (N. S.) 501, 502, note. When a president or cashier of a bank, acts beyond the general usage, practice, and course of their business, they must ordinarily act by authority or resolutions of the directors or according to special usage or custom, and individuals who are doing business with them are bound to know at their peril to what extent unusual power has been confided

to such officers. The bank will not be bound by the unauthorized acts of its officers, unless by a course of action, either brief or long continued, showing clearly the intent of the bank to be so bound. 7 Corpus Juris, 526 (130); 3 R. C. L. 442 (69). There is no such evidence in this case as would tend to show that the plaintiff bank, either directly or by usage and custom, authorized its president to release from the operation of its mortgage the cotton sold to defendants.

Eliminating the $200 payment to the bank, which was made in 1923, and therefore could not have been of the proceeds of the 1924 crop, and there being no evidence to show a special authority in McSwain, the president, to release the cotton from plaintiff's mortgage, the court properly gave the general charge for plaintiff as requested.

The foregoing being the law of the case, it becomes unnecessary to pass upon other assignments of error. The judgment is affirmed.

Affirmed.

On Rehearing.

It is insisted that the court was in error in its statement of facts, in that it was stated:

"It is argued in brief that the testimony of this witness [Wood] shows that the plaintiff was paid $200 of the proceeds of the Everage cotton."

This last is not borne out by the record. Wood's testimony on this point is that he paid the bank $200 in 1923 for Everage. The record on this point shows that Wood was asked this question:

"And is it not true that you sold Everage's share of the cotton and paid the proceeds to W. P. McSwain & Bro. for this fertilizer? Was this not done on the instruction of W. P. McSwain, the president of the First National Bank of Brantley?"

The answer to this was:

"Except during the year 1923 I paid to the First National Bank $200 that Everage owed this bank."

This seems to us to sustain the statement made in the original opinion. It does appear from the record that Horn made some allusion to a ledger sheet which showed a payment of $200 "along in 1924." No such ledger sheet appears in evidence, unless reference is made to the list of credits appearing in the record in connection with the Everage mortgage. If the witness is referring to these credits, then it appears that the credit was entered 10/15/23, which also sustains the statement of the court and corroborates Wood's statement.

The application is overruled.