TORBERT, Chief Justice.
This is an appeal from a judgment entered by the Marion County Circuit Court permanently enjoining the appellant, Federal Deposit Insurance Corporation (FDIC), *1019 from enforcing the payment of a promissory note and foreclosing a mortgage securing the note. We reverse.
On November 3, 1978, appellees, James and Earlene Franks, obtained a loan of $37,280.00 from the Bank of Hackleburg (BOH). Appellees executed a promissory note in favor of BOH and secured the note with a real estate mortgage on 125 acres of land they owned in Marion County. The indebtedness was to be paid in four annual installments of $9,320.00 each, plus interest.
On December 27, 1980, Mr. Franks paid the second installment, leaving a balance of $18,640.00 at that time. That same day, Ray Graham, the executive vice-president and chief executive officer of BOH, approached Mr. Franks, in the bank, about the possibility of purchasing a separate piece of property owned by Mr. and Mrs. Franks in Franklin County. Graham, in addition to his duties as an officer of BOH, was a member of the board of directors of BOH and the owner of more than 80% of BOH stock. James Franks agreed to sell the property, and on December 31, 1980, James executed a warranty deed in Graham’s office, conveying his interest in 175 acres of land in Franklin County to Graham. The purchase price was $41,175.93.
As part of the consideration for the conveyance, Graham agreed to assume the balance owed on the mortgage held by BOH on the Frankses’ Marion County land. In addition, Graham paid James Franks $5,425.00 when James executed the deed, with the understanding that the balance of the purchase price of the Franklin County property would be paid when Earlene signed the deed. Earlene signed the deed several days later.
On January 12, 1981, James Franks received a check drawn on Graham’s account for $17,110.93, which represented the balance of the purchase price on the Franklin County property. Accompanying the check was a photocopy of the Frankses’ loan ledger card, on which was written the following: “I am assuming this note [on the Marion County property] as part payment for 175 acres of land in Franklin Co., Al. 1-2-81 Ray Graham Received Deed 1-2-81.”
Two years later, in February 1983, James Franks received a notice from BOH of nonpayment of the mortgage debt on the Marion County property. BOH claimed that James owed $9,320.00, plus interest, which was the last installment of the mortgage debt.[1] James Franks denied that he owed BOH any money and alleged that Graham had assumed payment of the debt; nevertheless, BOH began non-judicial mortgage foreclosure proceedings. James and Earlene Franks then filed this action to enjoin BOH from foreclosing the mortgage.
Subsequent to the filing of the complaint by James and Earlene, the Superintendent of Banks for the State of Alabama appointed FDIC receiver for BOH. Thereafter, upon motion, FDIC was substituted as the defendant. Testimony was taken on the merits of the cause before the trial court, sitting without a jury, and the trial court entered its judgment in April 1984, permanently enjoining FDIC from enforcing the payment of the promissory note and foreclosing the mortgage securing the note.
Graham had resigned as executive vice-president and as a member of the board of directors of BOH in August 1981. At the time of the trial, Graham could not be located.
On appeal, FDIC phrases the issue in this case in terms of whether the chief executive officer of a bank can release the bank’s debtors other than in due course and on payment of their indebtedness. FDIC argues that regardless of whether Graham told James Franks that he would assume the mortgage debt, Graham was acting in his personal capacity and not in accordance with the usual course of busi *1020 ness of BOH; therefore, FDIC argues, Graham’s representations did not bind BOH and the Frankses are still liable for the debt. We agree.
Generally, the applicable principle is stated in 10 Am.Jur.2d Banks § 101, p. 104-05 (1963):
“One dealing with an officer or agent of a bank is not justified in all cases in relying upon the appearance of authority in such officer or agent, but may, because of the circumstances surrounding the transaction, be put upon inquiry as to whether or not the authority of such person to act in such manner exists and is as extensive as it purports to be, especially where it appears that the officer or agent has a personal interest and may derive a personal benefit from the transaction .... The test in ascertaining whether the bank involved is bound by his act is whether the transaction is with the bank and concerns its business, or is with the officer or agent personally and his business; if of the latter character, the bank is not bound thereby_” (Emphasis added).
Furthermore, 10 Am.Jur.2d Banks § 104, p. 107 (1963), states:
“An officer of a bank has no inherent power to release a debtor from an obligation due the bank other than in due course and upon payment, and where such a step is taken without authority, the officer is acting outside the scope of his apparent powers and not according to the usual course of business, and the bank is not bound by the release.”
These principles of law are in accord with the decision of the Court of Appeals in Butler & Gilchrist v. First National Bank of Brantley, 22 Ala.App. 504, 117 So. 490 (1928). In Butler & Gilchrist, the sole question was whether the president of the First National Bank of Brantley had the authority to waive the lien of the bank on cotton grown by a debtor and covered by a mortgage to the bank. The court, holding that the bank president had no such authority, stated:
“Officers of a bank have authority to act in accordance with the general usage, practice, and course of their business, and, when thus acting, they bind their bank in favor of third persons who have no knowledge of any narrower limitations of their power. First National Bank of Montgomery v. Fidelity, etc. Co., 145 Ala. 335, 40 So. 415, 5 L.R.A. (N.S.) 418, 117 Am.St.Rep. 45, 8 Ann.Cas. 241. But, unless specially empowered to do so, an officer of a bank has no inherent power to release, otherwise than in due course and on payment, debtors of the bank. The foregoing applies equally to presidents and cashiers. And, when the president of a bank undertakes to release from obligation one who is indebted to the bank on a valid claim, he is outside the scope of his apparent authority, and is acting not according to usage, practice, or usual course of business, but in plain disregard of the bank and its interest. This he cannot do. [Citations omitted.] When a president or cashier of a bank, acts beyond the general usage, practice, and course of their business, they must ordinarily act by authority or resolutions of the directors or according to special usage or custom, and individuals who are doing business with them are bound to know at their peril to what extent unusual power has been confided to such officers. The bank will not be bound by the unauthorized acts of its officers_” (Emphasis added.)
22 Ala.App. at 506, 117 So. at 491.
A case almost directly on point is State ex rel. Squire v. Frasier, 133 Ohio St. 283, 13 N.E.2d 248 (1938). In Squire, the superintendent of banks for the State of Ohio brought suit against the defendants, the makers of a promissory note payable to the Union Trust Company of Cleveland, to hold the defendants liable on the note. The note was secured by a real estate mortgage on property owned by the defendants. At trial, evidence was presented which established an agreement by an executive officer of the bank, the vice chairman of the board of directors, to release the defendants from *1021 liability on the note in consideration for the defendants’ conveying their mortgaged property to a purchaser who agreed to pay the indebtedness. The Ohio Supreme Court held that such evidence did not establish a good defense and, in language strikingly similar to that in Butler & Gilchrist, supra, stated:
“[A]n officer of a bank has no inherent power to release a debtor from an obligation due the bank, such as a promissory note, otherwise than in due course and upon payment. If he undertakes to do so on his own initiative and without authority, he is acting outside the scope of his apparent powers and not according to usage, practice, or the usual course of business, and the bank will not be bound thereby.”
133 Ohio St. at 286, 13 N.E.2d at 249.
The United States Court of Appeals, Tenth Circuit, reached a similar result in Harris v. Leslie, 76 F.2d 4 (10th Cir.1935). In Harris, the defendant executed a promissory note, payable to the First National Bank of Wewoka, Oklahoma, for $2,000.00. The bank failed and was placed in the hands of a receiver, who instituted an action to recover on the note. The defendant alleged that, in exchange for a personal loan from the defendant, W.C. Bunyard, president of the bank, agreed to apply a credit of an equal amount to the defendant’s note and to protect the defendant against payment of the note to the extent of the credit. Bunyard, in addition to being an officer of the bank, was an active member of the bank’s board of directors. The court held that Bunyard’s agreement did not bind the bank and that since the amount due had not otherwise been paid, the full sum represented by the note as payable by the defendant, was due the bank. In so holding, the court, in language applicable to this ease, stated:
“The fact that Bunyard was president, principal officer, and active member of the board of directors was not enough to constitute authority to act for the bank in a matter in which he had a personal interest. And the allegation that the agreement made in the circumstances was that of the bank was merely an untenable conclusion of law. The transaction was exclusively between the two individuals. The bank had no concern in it. Bunyard acted for himself. His agreement to make payment of a like sum on defendant’s note to the bank and to protect defendant against payment of that amount was an individual obligation which did not bind the bank, and defendant was charged with knowledge of that consequence.”
76 F.2d at 5.
The evidence in this case, the most telling of which is Graham’s handwritten agreement assuming Mr. and Mrs. Franks’s note as part payment for the purchase of the Franklin County property, clearly shows that the transaction between Graham and Mr. and Mrs. Franks was purely personal and was entered into by Graham only in his individual capacity and not in his capacity as an officer of BOH. The fact that Graham, admittedly chief executive officer, member of the board of directors, and owner of 80% of the stock of BOH at the time of the conveyance, bought property from Mr. and Mrs. Franks and agreed to assume a mortgage on a separate piece of property owned by them, does not mean that the mortgage has been paid, discharged, released, or satisfied, when BOH has never received the final payment. Moreover, there has been no evidence presented in this case which would tend to show that BOH, either directly or by usage and custom, ratified Graham’s actions or in any way authorized Graham to release Mr. and Mrs. Franks from this obligation.
The subject matter of this suit was not the conveyance of the Franklin County property by Mr. and Mrs. Franks to Graham; rather, the subject matter of this suit was the obligation incurred by the Franks-es to BOH in obtaining a loan from BOH. Our holding, that Mr. and Mrs. Franks have no grounds to void their obligation to BOH, in no way is intended to foreclose any applicable claim that they may have *1022 against Graham or against any assets of Graham in the hands of the receiver, FDIC.
Accordingly, the judgment of the trial court is reversed and the cause remanded.
REVERSED AND REMANDED.
ALMON, EMBRY, BEATTY and ADAMS, JJ., concur.

. The third installment payment was made when a cashier’s check for $11,097.18, payable to James Franks’s brother-in-law, Jackie Rayburn, was delivered to BOH and credited to the Frankses' loan account. The cashier's check had been purchased with a check written on Graham’s account.