[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 700 
Hightower and Company, Inc. (Hightower), appeals from a summary judgment awarding United States Fidelity and Guaranty Company (USF G) $1,135,079.75, plus other relief, against Hightower for its failure to exonerate and indemnify USF G from obligations under payment and performance bonds issued by USF G.
Hightower contracted with the United States Government on March 18, 1985, to construct housing units at Maxwell Air Force Base. The contract, being in excess of $2,000, was subject to the "Miller Act," 40 U.S.C. § 270a et seq., which required Hightower to provide the Government with payment and performance bonds from an acceptable surety to secure proper performance of the contract and prompt payment to all suppliers and subcontractors. As Hightower's surety on the Maxwell project, USF G provided a performance bond of $3,887,900 and a payment bond of $1,555,160 in favor of the Government with Hightower as principal.
Hightower encountered difficulties on the project, and the Government issued "deficiency cure" notices on November 15, 1985, and January 6, 1986. Each notice stated that, unless the deficiency was cured within 10 days, the Government would be entitled to terminate the contract under its default clause. The Government issued a third deficiency notice on April 10, 1986, and requested that Hightower accelerate its work and submit a revised completion schedule. Hightower responded that it would be unable to complete the project within the time remaining, and the Government declared Hightower in default on May 13, 1986.
USF G demanded that Hightower place it "in funds" before any payments under the bonds were made to the Government and suppliers and subcontractors. Hightower replied that it considered the termination unjustified and would treat payments by USF G pursuant to the bonds as not made in good faith. In response to USF G's request, however, Hightower either acknowledged the amounts due subcontractors and suppliers or asserted that the amounts were not presently payable because Hightower had not received progress payments from the *Page 701 
Government after termination of the contract.
USF G entered into payment agreements with the subcontractors and suppliers on the project, but declined to become contractor of record. The Government awarded a new contract after it had inventoried stored materials and prepared a bid solicitation. Based on additional engineering costs, amounts payable under the new contract, remedial work, and costs incurred by the Government, USF G settled with the Government for $865,071.46 under the performance bond and with suppliers and subcontractors for $264,750.99 under the payment bond.
USF G sued in July 1986, asking that Hightower be required to exonerate and indemnify USF G for amounts paid pursuant to the bonds. Hightower denied liability and counterclaimed against USF G for breach of duty of good faith, wanton breach of good faith, interference with contract, breach of contract, negligence, and wantonness. The court granted USF G a summary judgment as to its complaint and granted USF G a summary judgment as to Hightower's counterclaim (upon conversion of USF G's motion to dismiss into a summary judgment motion); Hightower appeals the denial of its motion to alter, amend, or vacate those summary judgments.
Three issues are presented: First, whether the trial court erred in converting USF G's motion to dismiss Hightower's counterclaim into a motion for summary judgment; second, whether Hightower's counterclaim presented genuine issues of material fact so as to defeat a motion for summary judgment; and third, whether as to USF G's complaint there were raised genuine issues of material fact so as to defeat a motion for summary judgment.
In reviewing a summary judgment, we must determine whether the evidence, when viewed in a light most favorable to the nonmoving party, will support any one of the nonmoving party's theories of liability, and thus defeat summary judgment.Tolbert v. Gulsby, 333 So.2d 129 (Ala. 1978). The granting of summary judgment is a nondiscretionary function of the trial court, and no presumption of correctness attaches to its decision upon appellate review. Tolbert, supra.
The first issue involves the procedure by which a Rule 12(b)(6), A.R.Civ.P., motion to dismiss is converted into a motion for summary judgment. At the hearing on USF G's motion for summary judgment on its complaint and its motion to dismiss Hightower's counterclaim, USF G requested that the court convert the motion to dismiss into a motion for summary judgment. Hightower objected to the conversion and stated that, with respect to the counterclaim, the only issue before the court was whether its counterclaim stated a legally cognizable claim. At the hearing, the trial court gave no indication of its intention to convert the motion to dismiss into a motion for summary judgment, but, 12 days later, granted summary judgment in favor of USF G on its complaint and on Hightower's counterclaim.
In pertinent part, Rule 12(b), A.R.Civ.P., states:
 "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." (Emphasis added.)
In pertinent part, Rule 56(c), A.R.Civ.P., states:
 "Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits." (Emphasis added.)
In Hales v. First Nat. Bank of Mobile, 380 So.2d 797, 799
(Ala. 1980), this Court stated:
 "It is clear from the above quoted portions of Rule 12 and 56 that: if a motion *Page 702 
under Rule 12(b)(6) is converted into a motion for summary judgment, both parties shall be given a reasonable opportunity to submit affidavits and other extraneous proofs to avoid a party being taken by surprise through conversion of the motion to dismiss to one for summary judgment. [Citations omitted.] It is also clear that the spirit of Rule 56 requires the same notice and hearing where the court contemplates summary judgment on its own initiative as it does when a party moves for summary judgment; i.e., ten days' notice. [Citations omitted.]"
Hales cites with approval the following language from Davisv. Howard, 561 F.2d 565 (5th Cir. 1977):
 " 'We do not hold that a notice to convert a 12(b)(6) motion into a summary judgment must be by written order, but the record must adequately demonstrate that all counsel were aware of the intentions of the district judge to treat the motion as converted, together with a reasonable opportunity afforded to the nonmoving party to present, by way of affidavit or otherwise, anything necessary to rebut the contention of the moving party. . . .
 " 'Today we hold that where matters outside the pleadings are considered in disposition of a Rule 12(b)(6) motion, so as to automatically convert it to one for summary judgment pursuant to Rule 56, or as one made sua sponte, the Rule 56 strictures of notice, hearing and admissibility into evidence are strictly required.' "
Hales, 380 So.2d at 799. (Emphasis added.)
USF G first asserts that the trial court's treatment of the motion to dismiss the counterclaim as a motion for summary judgment was mandated by Hightower's pleadings. In other words, because Hightower adopted and incorporated by reference its counterclaim as an affirmative defense to USF G's complaint, USF G argues that, in ruling on USF G's motion for summary judgment on the main claim, the court was forced to consider and adjudicate all of the issues in the counterclaim. Hightower's incorporation and adoption of the terms of the counterclaim does not, however, relieve the trial court of its duty to provide notice to the parties upon conversion of a motion to dismiss into one for summary judgment. USF G cites no authority derived from the Alabama Rules of Civil Procedure to persuade us otherwise.
USF G also asserts that, at the hearing, the trial court made clear its intention to treat the motion to dismiss as one for summary judgment and that Hightower then had a 12-day period in which to submit materials in opposition to the motion. At the June 4 hearing, however, in response to USF 
G's statement that the motion to dismiss should be treated as one for summary judgment, the court vaguely replied, "Okay." When Hightower objected to any such conversion, the court did not reply and did not indicate to the parties, either by oral or written order, its intentions with respect to the conversion. It is clear from the transcript of the hearing that Hightower proceeded to argue against a motion to dismiss and had no knowledge that the court contemplated a change in the procedural posture of the case.
When the trial court is called upon to consider a Rule 12(b)(6) motion, it must examine the allegations in the complaint, or, as in the instant case, the counterclaim, and construe it so as to "resolve all doubts concerning [its] sufficiency in favor of the [claimant]." In so doing, the court does not consider whether the claimant will ultimately prevail, only whether he has stated a claim under which he may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala. 1985), citing First National Bank v. Gilbert Imported Hardwoods, Inc.,398 So.2d 258 (Ala. 1981), and Karagan v. City of Mobile,420 So.2d 57 (Ala. 1982).
If the motion, however, is converted to a Rule 56 motion for summary judgment, the "moving party's burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law." Papastefan v. B L Const. Co., 356 So.2d 158
(Ala. 1978), citing *Page 703 
C. Wright and A. Miller, Federal Practice and Procedure: Civil§ 1366 (1969).
Once made and properly supported, the motion for summary judgment is to be granted unless the adverse party makes an evidentiary or factual showing that there is a genuine issue of fact for trial. See Butler v. Michigan Mut. Ins. Co.,402 So.2d 949 (Ala. 1981). The 10-day requirement of Rule 56 gives the adverse party "sufficient time to prepare a rebuttal to the moving party's [proof] that there is no genuine issue as to any material fact." Billingsley v. Gordon, 340 So.2d 743, 744 (Ala. 1976).
The record reveals that Hightower had no notice of the motion for summary judgment on the counterclaim before USF G made its oral motion at the June 4 hearing. The results of summary judgment are conclusive of parties' rights and obligations, and Rules 12(b) and 56(c) were drafted to ensure that the court is fully apprised of the relevant facts and circumstances of the case before it rules on a summary judgment motion. On its post-judgment motion to alter, amend, or vacate the summary judgments, Hightower submitted documents, affidavits, and other materials in opposition to the summary judgment entered as to its counterclaim. Although USF G correctly states in its brief that evidence in opposition to a motion for summary judgment belatedly submitted in a post-judgment motion is generally improper (see Moore v. Glover, 501 So.2d 1187, 1188
(Ala. 1986)), Hightower's evidentiary submission in this manner serves to isolate the fact that it did not receive proper notice of the conversion.
In reaching our decision on the first issue, we are not deciding whether summary judgment would be proper as to Hightower's counterclaim. We are only deciding that Hightower was denied procedural rights pursuant to Rules 12(b) and 56(c), A.R.Civ.P. Consequently, because it is not clear from the record whether the trial court considered Hightower's post-judgment submission of evidence in opposition to USF G's summary judgment motion, we remand the cause. Upon remand, the trial court is directed to conduct a proper hearing, affording both parties proper notice pursuant to Rule 56, to determine whether any genuine issue of material fact is present.
The third issue questions the correctness of the summary judgment in favor of USF G on its complaint. In its answer, Hightower alleged, "USF G is not entitled to any of the relief requested in its Complaint due to the grounds set forth hereinbelow in the Counterclaim, which is incorporated herein by reference and made a part hereof." The counterclaim sought relief for breach of good faith, wanton breach of good faith, breach of contract, interference with contract, negligence, and wantonness.[1] Thus, by its pleading, Hightower set up the allegations of its counterclaim as affirmative defenses to USF G's complaint.
Because USF G's claim and Hightower's counterclaim arise out of the same transactions and operative facts, we believe the issues raised by them are "so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results." Gray v. Central Bank of Tuscaloosa,N.A., 519 So.2d 477 (Ala. 1987), citing Branch v. SouthTrustBank of Dothan, N.A., 514 So.2d 1373 (Ala. 1987). Any determination of damages suffered by USF G cannot be dispositive in the absence of a proper adjudication of Hightower's counterclaim. *Page 704 
Thus, the trial court's premature entry of summary judgment on Hightower's counterclaim, without providing proper notice to the parties of its conversion of USF G's motion to dismiss, necessarily makes its entry of summary judgment on USF G's complaint premature. One cannot be determined exclusive of the other.
REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
TORBERT, C.J., and MADDOX, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
[1] We note that a surety in Alabama has the right to stand on its contract and to exact compliance with its stipulations, which may not be extended by construction or implication beyond the precise terms of the agreement. Maryland Casualty Co. v.Cunningham, 234 Ala. 80, 173 So. 506 (1937); First NationalBank v. Fidelity Deposit Co., 145 Ala. 335, 40 So. 415
(1906); and A. Stearns, Stearns on Suretyship (5th ed. 1951). The contract of a surety, however, is to be construed according to the intent of the parties and the implied condition of good faith. See, generally, City of Birmingham v. Trammell, 267 Ala. 245, 101 So.2d 259 (1958); White's Adm'r v. Life Association ofAmerica, 63 Ala. 419, 424 (1878); and Stearns on Suretyship,supra. An extension of the terms of the suretyship agreement by either party would, as a result, breach the duty of good faith.